ORIG

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Summit Business Media Holding Company, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 11-10231(PJW)<br><br>Joint Administration Requested<br>Re: Docket No. 11 |

## INTERIM ORDER (I) AUTHORIZING POST-PETITION SECURED FINANCING PURSUANT TO SECTIONS 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 503(B) OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) PROVIDING ADEQUATE PROTECTION TO THE EXISTING FIRST LIEN SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE; (IV) PROVIDING POST-PETITION LIENS TO THE EXISTING SECOND LIEN LENDERS; (V) MODIFYING THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE; AND (VI) SCHEDULING A FINAL HEARING

Upon the motion (the "**Motion**"), dated January 26 2011, of Summit Business Media Holding Company and its affiliates, debtors and debtors-in-possession, (collectively, the "**Debtors**") seeking entry of an Interim Order and the Final Order (as defined below):

a) authorizing the Debtors to obtain post-petition financing pursuant to sections 363 and 364 of title 11 of the United States Code (the "**Bankruptcy Code**"), by entering into a secured, post-petition, debtor-in-possession credit facility on a super-priority and priming basis to be executed after the entry of this Order (as may be amended, supplemented or otherwise modified from time to time, the "**DIP Facility**") providing for a multiple-draw, term loan facility in an aggregate principal amount not to exceed $5 million for operating costs in accordance with

[1] The Debtors in these Cases are: (i) Summit Business Media Holding Company (5547); (ii) Summit Business Media Intermediate Holding Company, LLC (5392); (iii) The National Underwriter Company (8770); (iv) Research Holdings, LTD. (5228); (v) Futures Magazine, Inc. (1102); (vi) NUCO Business Information, LLC (7364); (vii) Agent Media Corporation (3991); (viii) Judy Diamond Associates, Inc. (0517); and (ix) Mining INDABA, LLC (4592). Individual case numbers are available on reasonable request.

the Budget (as defined below) (the "**DIP Loans**").

b) authorizing the Debtors to execute and enter into the DIP Facility, among the Debtors, Bank of Montreal, Chicago Branch, as agent (the "**DIP Agent**") and post-petition lender, and those certain lender institutions that are signatories to the DIP Facility (collectively with the DIP Agent, the "**DIP Lenders**," and all documents, agreements or instruments in connection with the DIP Loans or related thereto, including the DIP Facility, this Interim Order, any Final Order (as defined below) and all other agreements, documents, notes or instruments related to the DIP Loans, the "**DIP Loan Documents**") and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

c) granting priming liens and super-priority claims to and on behalf of and for the benefit of the DIP Lenders in all DIP Collateral (as defined below) in accordance with the DIP Loan Documents, this Interim Order and the Final Order (as defined below) to secure any and all of the Post-petition Obligations (as defined below);

d) granting adequate protection to Bank of Montreal, Chicago Branch, as administrative agent (the "**Existing First Lien Agent**") and as lender, and to those other lenders (with the Existing First Lien Agent, the "**Existing First Lien Lenders**") that are parties to:

   i. that certain Amended and Restated First Lien Credit Agreement dated as of July 6, 2007, as amended from time to time (the **"Existing First Lien Credit Agreement"**), among the Existing First Lien Agent, as administrative agent, the Existing First Lien Lenders, as lenders, Summit Business Media Intermediate Holding Company, LLC, as borrower, and certain affiliates of

Summit Business Media Intermediate Holding Company, LLC, as guarantors;

ii. that certain Parent Guaranty, dated as of November 3, 2006, by Summit Business Media Holding Company, as guarantor, in favor of the Existing First Lien Agent for the benefit of each of the Existing First Lien Secured Parties (as defined below) (the "**Parent Guaranty**");

iii. that certain Subsidiary Guaranty, dated as of November 3, 2006, by The National Underwriter Company, as successor-by-merger to Summit Business Media, LLC and Highline Business Media, LLC, as guarantor, in favor of the Existing First Lien Agent for the benefit of each of the Existing First Lien Secured Parties (as defined below), together with certain supplements thereto, pursuant to which the other debtor-affiliates of Summit Business Media Intermediate Holding Company, LLC guaranteed the obligations owed to the Existing First Lien Secured Parties (as defined below) under the Existing First Lien Credit Agreement (collectively, the "**Subsidiary Guaranty**");

iv. that certain Pledge and Security Agreement, dated as of November 3, 2006, by the Debtors and certain of their predecessors, in favor of the Existing First Lien Agent, together with certain supplements thereto, pursuant to which substantially all of the Debtors' assets were pledged to the Existing First Lien Secured Parties (as defined below) to secure the obligations to the Existing First Lien Lenders under the Existing First Lien Credit Agreement and to secure the obligations owed to the Collar Provider (as defined below);

v. those certain Trademark Security Agreements, Copyright Security Agreements and deposit account control agreements among certain of the

Debtors and the Existing First Lien Agent whereby certain of the Debtors pledged certain intellectual property to secure, and granted control rights with respect to certain cash accounts in connection with, the obligations to the Existing First Lien Lenders under the Existing First Lien Credit Agreement and the obligations owed to the Collar Provider (as defined below); and

vi. that certain First Lien Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of November 7, 2006, whereby The National Underwriter Company granted in favor of the Existing First Lien Agent a mortgage to certain real and personal property located in Kenton County, Kentucky.

The security agreements, mortgage, pledge agreements, collateral assignments listed in clauses (iv) through (vi) above are hereinafter referred to as the "**Pre-petition First Lien Security Agreements**"; the Pre-petition First Lien Security Agreements together with the Existing First Lien Credit Agreement, the Parent Guaranty, the Subsidiary Guaranty and the Interest Rate Collar (as defined below) are hereinafter referred to as the "**Pre-petition First Lien Transaction Documents**"; any and all liens and security interests created under any Pre-petition First Lien Security Agreement, are hereinafter referred to collectively as the "**First Lien Lenders' Pre-petition Liens**"; any and all collateral posted, transferred, perfected, assigned, pledged or attached under any Pre-petition First Lien Security Agreement are hereinafter referred to collectively as the "**Pre-petition Collateral**"; any Pre-petition Collateral also constituting cash collateral under section 363(a) of the Bankruptcy Code is hereinafter referred to as the

"**Cash Collateral**"; all obligations, loans, financial accommodations and other amounts owing under, or in connection with, the Pre-petition First Lien Transaction Documents are hereinafter referred to as the "**Pre-petition First Lien Obligations**."

e) granting adequate protection to Merrill Lynch Capital Services, Inc., the interest rate collar provider (the "**Collar Provider**" and with the Existing First Lien Lenders, the "**Existing First Lien Secured Parties**" pursuant to the ISDA Master Agreement and the Schedule to the Master Agreement, each between the Collar Provider and Summit Business Media Intermediate Holding Company, LLC (the "Counterparty") and each dated as of August 7, 2007 (collectively, the Master Agreement") and the Zero-Cost Collar Transaction, ML Reference No. 07DL24330, 3704257 (the "Transaction") between the Collar Provider and the Counterparty, evidenced by the Confirmation dated as of August 7, 2007, as amended from time to time by the parties, that is subject to and forms part of the Master Agreement (collectively, the "**Interest Rate Collar**");

f) granting adequate protection, junior in all respects to, the Post-petition Obligations (as defined below), the Post-petition Liens (as defined below), the Super-priority Claims (as defined below), the First Lien Lenders' Adequate Protection Obligations (as defined below), the First Lien Lenders' Adequate Protection Liens (as defined below), the First Lien Lenders' Adequate Protection Claims (as defined below), the Pre-petition First Lien Obligations and the First Lien Lenders' Pre-petition Liens, to Ares Capital Corporation, as administrative agent (the "**Existing Second Lien Agent**") and as lender, and to those other

lenders (with the Existing Second Lien Agent, the "**Existing Second Lien Lenders**") that are parties to:

i. that certain the Amended and Restated Second Lien Credit Agreement dated July 6, 2007, as amended (the "**Existing Second Lien Credit Agreement**"), among Summit Business Media Intermediate Holding Company, LLC, the Existing Second Lien Agent and the Existing Second Lien Lenders; and

ii. that certain Parent Guaranty, dated as of November 3, 2006, by Summit Business Media Holding Company, as guarantor, in favor of the Existing Second Lien Agent for the benefit of each of the Existing Second Lien Lenders (the "**Second Lien Parent Guaranty**");

iii. that certain Subsidiary Guaranty, dated as of November 3, 2006, by The National Underwriter Company, as successor-by-merger to Summit Business Media, LLC and Highline Business Media, LLC, as guarantor, in favor of the Existing Second Lien Agent for the benefit of each of the Existing Second Lien Lenders, together with certain supplements thereto, pursuant to which the other debtor-affiliates of Summit Business Media Intermediate Holding Company, LLC guaranteed the obligations owed to the Existing Second Lien Lenders under the Existing Second Lien Credit Agreement (collectively, the "**Second Lien Subsidiary Guaranty**");

iv. (1) that certain Pledge and Security Agreement, dated as of November 3, 2006, by the Debtors and certain of their predecessors, in favor of the Existing Second Lien Agent, together with certain supplements thereto,

(2) those certain Trademark Security Agreements, Copyright Security Agreements and deposit account control agreements among certain of the Debtors and the Existing Second Lien Agent whereby certain of the Debtors pledged certain intellectual property to secure, and granted control rights with respect to certain cash accounts in connection with, the obligations to the Existing Second Lien Lenders under the Existing Second Lien Credit Agreement and (3) that certain Second Lien Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of November 7, 2006, whereby The National Underwriter Company granted in favor of the Existing Second Lien Agent a mortgage to certain real and personal property located in Kenton County, Kentucky, pursuant to which the Pre-petition Collateral was pledged to secure the obligations to the Existing Second Lien Lenders under the Existing Second Lien Credit Agreement on a subordinated basis to the First Lien Lenders' Pre-petition Liens;

The security agreements, mortgage, pledge agreements, collateral assignments listed in clause (iv) above are hereinafter referred to as the "**Pre-petition Second Lien Security Agreements**"; the Pre-petition Second Lien Security Agreement together with the Existing Second Lien Credit Agreement, the Second Lien Parent Guaranty and the Second Lien Subsidiary Guaranty are hereinafter referred to as the "**Pre-petition Second Lien Transaction Documents**" and with the Pre-petition First Lien Transaction Documents, the "**Pre-petition Transaction Documents**"; any and all liens and security interests created under any Pre-

petition Second Lien Security Agreements, are hereinafter referred to collectively as the "**Second Lien Lenders' Pre-petition Liens**" and with the First Lien Lenders' Pre-Petition Liens, the "**Pre-petition Liens**"; all obligations, loans, financial accommodations and other amounts owing under, or in connection with, the Pre-petition Second Lien Transaction Documents are hereinafter referred to as the "**Pre-petition Second Lien Obligations**" and with the Pre-petition First Lien Obligations, the "**Pre-petition Obligations**."

g) authorizing the Debtors to use cash collateral (as such term is defined in the Bankruptcy Code) in which the Existing First Lien Secured Parties and the Existing Second Lien Lenders have an interest;

h) approving certain stipulations by the Debtors with respect to the Pre-petition Transaction Documents and the Pre-petition Liens;

i) pending a final hearing on the Motion (the "**Final Hearing**"), approving the DIP Loans under the DIP Facility in the principal amount not to exceed $2.5 million to and including the date on which the Final Order (as defined below) is entered;

j) modifying the automatic stay, under section 362 of the Bankruptcy Code, to permit the DIP Lenders to accelerate the repayment of amounts due and to terminate all commitments under the DIP Facility upon a Cash Collateral Termination Event (as defined below);

k) subject, and only effective upon the entry of a final order granting such relief, limiting the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code; and

l) scheduling the Final Hearing within 45 days of the entry of the Interim Order and

approve notice with respect thereto in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

The Court having considered the Motion, the exhibits attached thereto, including the DIP Loan Documents, and a hearing to consider approval of the Commitments (as defined in the DIP Facility) in an interim aggregate amount equal to $2.5 million having been held and concluded on January 28, 2011 (the "**Interim Hearing**"); and based upon all of the pleadings filed with the Court and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS, DETERMINES, ORDERS AND ADJUDGES:**

1. ***Bankruptcy Petition***. On January 25 2011 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in the management and possession of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no statutory committee (a "**Committee**") has yet been appointed in the Debtors' chapter 11 cases (the "**Cases**").

2. ***Jurisdiction***. Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. ***Need for Financing***.

a. An immediate and critical need exists for the Debtors to obtain funds and use Pre-petition Collateral and Cash Collateral in order, among other thing, to: (a) continue the orderly operation of their business; (b) maintain their business relationships with vendors,

suppliers and customers; and (c) make payroll, capital expenditures and satisfy other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors and to a successful reorganization of the Debtors.

b. The Debtors are unable to obtain unsecured credit allowable only as an unsecured, administrative expense claim under section 503(b)(1) of the Bankruptcy Code. The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) or 364(c)(3) without the Debtors' granting to the DIP Lenders liens on the assets of the Debtors pursuant to sections 364(c)(2) and 364(c)(3) and 364(d) of the Bankruptcy Code and super-priority administrative expense claim status pursuant to section 364(c)(1) of the Bankruptcy Code, in each case as provided by this Interim Order and the DIP Loan Documents.

c. Based upon the record before the Court, the terms of the DIP Facility and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

d. Based upon the record before the Court, the ability of the Debtors to continue their business and reorganize or sell their assets under chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing and using such Cash Collateral.

e. Based upon the record before the Court, the Debtors will suffer immediate and irreparable harm if the requested post-petition financing is not available on an interim and then final basis.

f. Based upon the record before the Court, it is in the best interests of the Debtors' estates that they be allowed to finance their operations and use Cash Collateral under

the terms and conditions set forth herein and in the DIP Loan Documents. The relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtors' estate, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Interim Order.

g. Based upon the record before the Court, the use of Cash Collateral and the terms of the DIP Loan Documents have been negotiated at arm's length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The DIP Lenders are extending financing to the Debtors in good faith and are entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code. The Existing First Lien Secured Parties and the Existing Second Lien Lenders are permitting the use of their Cash Collateral in good faith.

4. ***Debtors' Stipulations***. The Debtors have stipulated, acknowledged, admitted, represented, and confirmed the following as of the Petition Date (the "**Debtors' Stipulations**"):

a. ***Pre-petition Transaction Documents.*** The Existing First Lien Secured Parties and the Existing Second Lien Lenders made loans and other financial accommodations to the Debtors. As of the Petition Date, the Debtors were liable to the Existing First Lien Secured Parties in respect of the Existing First Lien Credit Agreement in the aggregate outstanding amount of not less than $188,618,143, plus expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Pre-petition First Lien Transaction Documents), and other obligations incurred in connection therewith, as provided in the Pre-petition First Lien Transaction Documents. As of the Petition Date, the Debtors were liable to the Existing Second Lien Lenders in respect of the Existing Second Lien Credit Agreement in the aggregate outstanding amount of not less than $55,224,420, plus

expenses (including any attorneys', accountants', appraisers' and financial advisors' fees to the extent that they are chargeable or reimbursable under the Pre-petition Second Lien Transaction Documents), and other obligations incurred in connection therewith, as provided in the Pre-petition Second Lien Transaction Documents.

b. ***Pre-petition Collateral.*** The Existing First Lien Secured Parties and the Existing Second Lien Lenders each properly perfected their mortgages, security interests and liens in and on the Pre-petition Collateral.

c. ***Pre-petition Transaction Documents.*** Each Pre-petition Transaction Document is a valid and binding agreement and the Debtors are obligated, as provided thereunder.

d. ***Pre-petition Obligations.*** The Pre-petition Obligations constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms; the Debtors have no objection, offset, defense or counterclaim of any kind or nature to the Pre-petition Obligations; and the Pre-petition Obligations, and any amounts previously paid to the Existing First Lien Secured Parties and the Existing Second Lien Lenders on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

e. ***Pre-petition Liens.***

i. The Pre-petition First Lien Obligations are secured by the First Lien Lenders' Pre-petition Liens and that each and every First Lien Lenders' Pre-petition Lien (x) is a valid, binding, perfected, enforceable, first-priority mortgage, lien and security interest granted to the Existing First Lien Secured Parties, which is not subject to avoidance, reduction,

disallowance, impairment or subordination by the Debtors pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (y) is separate and distinct from, and senior in priority to, the Second Lien Lenders' Pre-petition Liens.

ii. The Pre-petition Second Lien Obligations are secured by the Second Lien Lenders' Pre-petition Liens and that each and every Second Lien Lenders' Pre-petition Lien (x) is a valid, binding, perfected, enforceable, subordinated mortgage, lien and security interest granted to the Existing Second Lien Lenders, which is not subject to avoidance, reduction, disallowance, impairment or subordination (other than to the First Lien Lenders' Pre-Petition Liens) by the Debtors pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (y) is separate and distinct from, and subordinate in priority to, the First Lien Lenders' Pre-petition Liens.

5. ***Interim Hearing & Interim Order***. Notwithstanding any other provision of this Order or of the other DIP Loan Documents, the Debtors shall not, prior to entry of a final order approving the DIP Loan Documents (the "**Final Order**") or such other further orders as this Court may enter, borrow or incur under the DIP Facility any Post-petition Obligations (as defined below) in an amount greater than $2.5 million (the "**Interim Amount**"). If a Final Order is not entered within sixty (60) days of the entry of this Order, all extensions of credit under the DIP Facility together with accrued interest shall be immediately due and payable.

6. ***Consensual Priming***. The Existing First Lien Secured Parties and the Existing Second Lien Lenders have consented to the priming of the Pre-petition Liens by the Post-petition

Liens (as defined below) on the terms and conditions set forth in this Interim Order and to the Debtors' use of Cash Collateral. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of such parties.

7. ***Service of Motion***. Notice of the relief sought by the Motion, and the hearing with respect thereto was delivered on January 26 2011 via facsimile and/or overnight delivery to the following parties in interest: (i) the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (ii) the Debtors' thirty (30) largest non-insider unsecured creditors on a consolidated basis, as identified in the Debtors' first day motions; (iii) counsel to the DIP Agent and the Existing First Lien Agent; (iv) the Existing Second Lien Agent and/or counsel thereto; and (v) the Internal Revenue Service, (collectively, the "**Interim Notice Parties**"), pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b) and 364(d) of the Bankruptcy Code.

8. ***Motion Granted***. The Motion is granted, subject to the provisions hereof. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Interim Order shall become effective immediately upon its entry.

9. ***DIP Facility Authorization***. The Debtors are hereby authorized to enter into the DIP Facility, substantially in the form filed with the Court, with such modifications as permitted by this Interim Order, and the other DIP Loan Documents; and are authorized to borrow funds incur debt, reimbursement obligations and other obligations, grant liens, make deposits, provide guaranties and indemnities and perform their obligations solely in accordance with the terms and conditions of the DIP Loan Documents up to the Interim Amount of $2.5 million, following

which the Debtors will seek the entry of the Final Order, authorizing them to borrow up to $5 million in aggregate, or such lesser amount as determined under the DIP Loan Documents.

a. In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees under the DIP Facility, including, without limitation:

i. the execution, delivery and performance of the DIP Loan Documents and any exhibits attached thereto;

ii. the payment to the DIP Lenders of the fees referred to in the DIP Loan Documents and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by the DIP Agent as provided for in the DIP Loan Documents, provided, however, that any fees and expenses of the professionals retained by the DIP Agent that are incurred shall be subject to the review process set forth in paragraph 16(a)(iii) hereof, and that, prior to the entry of a Final Order, only one-half of the Upfront Fee (as defined in the DIP Facility) shall be payable by the Debtors; and

iii. the performance of all other acts required under or in connection with the DIP Loan Documents.

b. All obligations owed to the DIP Lenders under or in connection with the DIP Loan Documents, including, without limitation, all post-petition obligations, loans, advances and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the DIP Loan Documents, are defined and referred to herein as the "**Post-petition Obligations.**"

10. ***Interim Borrowing***. The Debtors are authorized to borrow up to the Interim Amount in accordance with the Budget, on an interim basis through and including the date of entry of the Final Order.

11. ***Post-petition Obligations Enforceable and Valid.*** Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable in accordance with their terms. With respect to the Post-petition Obligations, no obligation, payment, transfer or grant of security under this Interim Order or the other DIP Loan Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

12. ***Cash, Cash Collateral & the Budget.***

a. Subject to the terms and conditions set forth in this Interim Order and the other DIP Loan Documents, the Debtors are authorized to use cash, including Cash Collateral and the DIP Loans, only as authorized in an approved Budget (as defined below), subject to the variance provided by paragraph 12(c) of this Interim Order and the DIP Loan Documents, until the earlier to occur of: (i) the termination, acceleration or maturity of the Post-petition Obligations as set forth in the DIP Loan Documents; and (ii) this Interim Order or the Final Order ceases to be in full force and effect (each a "**Cash Collateral Termination Event**") or with respect to Carve-Out Expenses (as defined below) to the extent permitted by paragraph 19 of this Interim Order and the DIP Loan Documents. The Debtors' authority to use cash, including Cash Collateral and the DIP Loans, shall automatically terminate on a Cash Collateral Termination Event without further order or relief from the Court (other than with respect to Carve-Out Expenses (as defined below) to the extent permitted by paragraph 19 of this Interim Order and the DIP Loan

Documents).

b. All of the Debtors' operating and capital expenditures and cash flow shall be set forth in a budget prepared on a rolling 13-week basis (the "**Budget**"), as may be modified from time to time with the consent of the DIP Agent. The Budget shall set forth expected receipts and all of the operating and capital expenditures to be made during each calendar week and in the aggregate for the period of time covered by the Budget. By no later than 3:00 p.m. prevailing Eastern Time of Wednesday of each calendar week, the Debtors shall submit to the DIP Agent an update and extension to the Budget satisfactory to the DIP Agent. Each week, the Debtor shall provide to the DIP Agent a variance report/reconciliation relating to the Budget and the amount of Available Cash (as defined below) for the preceding week and for the cumulative period commencing upon the closing date of the DIP Loan Documents (such weekly variance report/reconciliation, the "**Weekly Cash Flow Variance Report**"), in each case in the form previously accepted under the Existing First Lien Credit Agreement. Each Weekly Cash Flow Variance Report shall be in form satisfactory to the DIP Agent. Prior to the repayment in full of the DIP Facility, all payments (inclusive of costs, expenses and fees) to be made by the Debtors shall be made pursuant to the Budget, subject to the variance provided by paragraph 12(c) of this Interim Order and the DIP Loan Documents.

c. For each four week period during any cumulative 13-week Budget period, or, if shorter, the preceding week(s) since the Petition Date, the Debtors shall not permit expenditures in the aggregate made during such four-week period for any line item to be greater than 110% of the projected amount for such line item contained in the Budget and shall not permit expenditures in the aggregate to be greater than 105% of total projected expenditures contained in the Budget, absent written consent of the DIP Agent. In addition, absent written consent of

the DIP Agent, the Debtors shall maintain actual cash receipts in an aggregate amount for the most recent four-week period that are greater than 90% of the aggregate amount of budgeted cash receipts for same four-week period.

d. The Debtors may only use cash, including Cash Collateral and the DIP Loans, (the "**Available Cash**") to pay the expenses set forth in an approved Budget, subject to the variance provided by paragraph 12(c) of this Interim Order and the DIP Loan Documents, or with respect to Carve-Out Expenses (as defined below) to the extent permitted by paragraph 19 of this Interim Order and the DIP Loan Documents. The Debtors shall use all Available Cash to fund Budget items before drawing on the DIP Loans unless, after giving effect to such funding with Available Cash, the amount of such Available Cash would be less than $1 million (the "**Minimum Amount**"). The amount of Available Cash during each calendar week will be measured on a weekly basis as of week-end, and shall be reported to the DIP Agent along with the Weekly Cash Flow Variance Report; provided, however, that the amount of Available Cash set forth in any Weekly Cash Flow Variance Report shall not affect the obligation of the Debtors to use Available Cash to fund Budget items if the amount of such Available Cash at the time of such funding exceeds the Minimum Amount.

13. ***Post-petition Liens***. As collateral securing the full satisfaction of the Post-petition Obligations by the Debtors, the DIP Lenders are hereby granted, as of the date of this Interim Order, and without the need for the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens (collectively the "**Post-petition Liens**") (all assets and property identified in this paragraph 13 being collectively referred to as the "**DIP Collateral**"):

a. ***First Lien on Unencumbered Property***. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all pre-petition and post-petition assets and property of the Debtors, whether existing on the Petition Date or thereafter acquired, to the extent such assets and property are not subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by section 546(b) of the Bankruptcy Code; including without limitation, all cash of the Debtors and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, proceeds of leases of real property, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing (collectively, "**Unencumbered Property**"); provided that Unencumbered Property shall not include the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code, including any proceeds of, or property and interests, unencumbered or otherwise, recovered in respect of any of the foregoing claims and causes of action (the "**Avoidance Actions**").

b. ***Liens Junior to Perfected, Pre-petition Liens***. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all pre-petition and post-petition assets and property of the Debtors (not including Avoidance Actions), whether now existing or hereafter acquired, that is subject to valid, perfected non-avoidable and enforceable liens, if any, in existence as of the Petition Date, which security interests and liens in favor of the DIP Lenders are immediately junior to such

valid, perfected and unavoidable liens, if any, including, without limitation, in all cash of the Debtors and any investment of such cash, inventory, any accounts receivable, other right to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, proceeds of leases of real property, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing.

c. ***Liens Senior to all Liens***. Pursuant to section 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all pre-petition and post-petition assets and property of the Debtors (not including Avoidance Actions), which shall be senior in priority to the Pre-petition Liens, whether such assets and property existed on the Petition Date or are thereafter acquired; including without limitation, all cash of the Debtors and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, proceeds of leases of real property, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing, subject only to valid, perfected and non-avoidable liens on such assets and property in favor of parties (other than the Existing First Lien Secured Parties and the Existing Second Lien Lenders) that are in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by section 546(b) of the Bankruptcy Code.

d. ***Liens Senior to Certain Other Liens***. The Post-petition Liens, the First Lien Lenders' Adequate Protection Liens (as defined below) and the Second Lien Lenders' Post-petition Liens (as defined below) shall not be subject or subordinate to any lien or security

interest that is avoided and preserved for the benefit of the Debtors and its estate under section 551 of the Bankruptcy Code.

14. ***Super-priority Claims***. In addition to the Post-petition Liens granted herein, and subject to the DIP Lenders' obligation to fund the Carve-Out Expenses (as defined below), all Post-petition Obligations shall constitute allowed, super-priority, administrative expense claims under section 503(b) of the Bankruptcy Code and under section 364(c)(1) of the Bankruptcy Code (the "**Super-priority Claims**") against the Debtors, having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503, 506(c), 507, 546(c), 726, 1113 and 1114 of the Bankruptcy Code, or otherwise whether incurred in the Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto (a "**Successor Case**"), provided, however, that prior to the entry of a Final Order the Super-priority Claims shall not have priority over any administrative expense claim allowed pursuant to Section 506(c) of the Bankruptcy Code. The Super-priority Claims shall be payable from, and have recourse to, all pre-petition and post-petition assets and property of the Debtors and all proceeds thereof, including the Avoidance Actions. Subject to amending Section 12.4 of the DIP Credit Agreement as set forth on the record in open Court at the first day hearing on 1/26/2011 @ 2:00 pm and as interlineated on the attached page 75 of the DIP Credit Agreement.

15. ***Indemnification***. The Debtors are hereby authorized and directed to indemnify the DIP Lenders against any liability arising in connection with the DIP Loan Documents to the extent provided in and subject to the DIP Loan Documents. All such indemnities of the DIP Lenders shall constitute Post-petition Obligations and shall be secured by the Post-petition Liens and afforded all of the priorities and protections afforded to the Post-petition Obligations under this Order and the other DIP Loan Documents.

16. ***Existing First Lien Secured Parties' Adequate Protection.***

a. The Existing First Lien Secured Parties are entitled, under sections 363(e) and 364(d)(1)(B) of the Bankruptcy Code, to adequate protection of their interest in the Pre-petition Collateral for the aggregate diminution in the value of the Existing First Lien Secured Parties' interest in the Pre-petition Collateral by reason of: (i) the imposition of the automatic stay under section 362 of the Bankruptcy Code; (ii) the priming of the First Lien Lenders' Pre-petition Liens; (iii) the use of the Existing First Lien Secured Parties' Cash Collateral; and (iv) the use, sale or lease of Pre-petition Collateral pursuant to section 363(a) of the Bankruptcy Code (the "**First Lien Lenders' Adequate Protection Obligations**"). Subject in all respects to the Post-petition Obligations, Post-petition Liens and the rights of the DIP Lenders under this Order and the DIP Loan Documents (which shall at all times rank senior and prior to the Pre-petition Obligations, Pre-petition Liens, Super-priority Claims, First Lien Lenders' Adequate Protection Obligations, First Lien Lenders' Adequate Protection Liens (as defined below) and the First Lien Lenders' Adequate Protection Claims (as defined below) and subject to the DIP Lenders' obligation under the DIP Facility to fund the Carve-Out Expenses (as defined below); the Existing First Lien Secured Parties are hereby provided with the following forms of adequate protection:

i. liens on all DIP Collateral (the "**First Lien Lenders' Adequate Protection Liens**"). Except as provided in this Order, the First Lien Lenders' Adequate Protection Liens shall not be made subject to or pari passu with any lien on the DIP Collateral by any order subsequently entered in any of the Cases or any Successor Case;

ii. allowed, super-priority claims under section 507(b) of the Bankruptcy Code against the Debtors' estate (the "**First Lien Lenders' Adequate Protection Claims**").

The First Lien Lenders' Adequate Protection Claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, whether incurred in any of the Cases or any Successor Case;

iii. reimbursement of all reasonable and documented fees and expenses incurred by professionals for the Existing First Lien Agent including, without limitation, the reasonable disbursements of counsel and any financial consultant, advisor or expert advising the Existing First Lien Agent, provided, however, that any request for payment of fees and expenses of professionals for the Existing First Lien Agent or DIP Agent shall be served upon the Debtors, any official committee of unsecured creditors appointed in the Cases and the U.S. Trustee and such parties shall have ten (10) days from receipt of the request for payment to object to such request and if an objection is made then payment of such request shall not be made without (a) the subsequent consent of the Debtors, any official committee of unsecured creditors and the U.S. Trustee, or (b) further Court order; and

iv. the consent of the Existing First Lien Secured Parties to the use of the Pre-petition Collateral by the Debtors shall terminate upon: (a) the Debtors' failure to make any payment specified in this paragraph to or on behalf of the Existing First Lien Secured Parties or to comply with their other obligations specified in this paragraph; (b) the occurrence of an Event of Default (as defined by the DIP Loan Documents); or (c) the occurrence of the DIP Facility Termination Date (as defined by the DIP Loan Documents); other than with respect to Carve-Out Expenses (as defined below) to the extent permitted by paragraph 19 of this Interim Order and the DIP Loan Documents.

b. The Existing First Lien Agent and its experts and advisors shall be given access for purposes of monitoring the business of the Debtors and the value of the Pre-petition

Collateral; and the Debtors shall provide the Existing First Lien Agent with any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent.

c. Subject to and effective only upon entry of a Final Order, the Debtors shall provide for the inclusion of credit bidding rights in favor of the Existing First Lien Secured Parties in connection with the sale of any of the Debtors' assets, whether conducted pursuant to Section 363 of the Bankruptcy Code, Section 1129(b) of the Bankruptcy Code or otherwise.

d. Notwithstanding anything herein to the contrary, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Existing First Lien Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection at any time, and nothing herein shall affect the rights of any other party or entity to seek or oppose such modification of the grant of the adequate protection provided hereby. If any additional adequate protection claims, liens or other rights are awarded at any time, such claims, liens and/or other rights shall be at all times junior in all respects to the claims and liens granted to or for the benefit of the DIP Lenders and shall not affect the priority, validity, binding nature, enforceability or perfection of any of such claims and liens granted to or for the benefit of the DIP Lenders; provided, that the foregoing is without prejudice to the right of the Debtors (consistent with the Debtors' stipulations herein) or any other party in interest, including the DIP Lenders, to challenge any such request.

17. ***Second Lien Lenders' Adequate Protection.***

a. The Existing Second Lien Secured Lenders are entitled, under sections 363(e) and 364(d)(1)(B) of the Bankruptcy Code, to adequate protection of their interest in

the Pre-petition Collateral for the aggregate diminution in the value of the Existing Second Lien Secured Lenders' interest in the Pre-petition Collateral by reason of: (i) the imposition of the automatic stay under section 362 of the Bankruptcy Code; (ii) the priming of the Second Lien Lenders' Pre-petition Liens; (iii) the use of the Existing Second Lien Secured Lenders' Cash Collateral; and (iv) the use, sale or lease of Pre-petition Collateral pursuant to section 363(a) of the Bankruptcy Code (the "Second Lien Lender Adequate Protection Obligations"). Subject in all respects to (x) the Post-petition Obligations, the Post-petition Liens, the Super-priority Claims and the rights of the DIP Lenders under this Order and the DIP Loan Documents (which shall at all times rank senior and prior to the Pre-petition Obligations, Pre-petition Liens, the First Lien Lenders' Adequate Protection Obligations, First Lien Lenders' Adequate Protection Liens and the First Lien Lenders' Adequate Protection Claims), (y) the First Lien Lenders' Adequate Protection Obligations, the First Lien Lenders' Adequate Protection Liens and the First Lien Lenders' Adequate Protection Claims and (z) the Pre-petition First Lien Obligations and First Lien Lenders' Pre-petition Liens, and any other valid, perfected non-avoidable and enforceable liens, if any, in existence and senior to the Second Lien Lenders' Pre-petition Liens as of the Petition Date, the Existing Second Lien Lenders are hereby provided with the following forms of adequate protection:

i. liens on all DIP Collateral (the "**<u>Second Lien Lenders' Adequate Protection Liens</u>**") junior in all respects to the Post-petition Liens of the DIP Lenders under this Order, the First Lien Lenders' Adequate

Protection Liens and the First Lien Lenders' Pre-petition Liens, and to any other valid, perfected non-avoidable and enforceable liens, if any, in existence and senior to the Second Lien Lenders' Pre-petition Liens as of the Petition Date. Except as provided in this Order, the Second Lien Lenders' Adequate Protection Liens shall not be made subject to or pari passu with any lien on the DIP Collateral by any order subsequently entered in any of the Cases or any Successor Case;

ii. allowed, super-priority claims under section 507(b) of the Bankruptcy Code against the Debtors' estate (the "**Second Lien Lenders' Adequate Protection Claims**"). The Second Lien Lenders' Adequate Protection Claims shall be junior in all respects to the First Lien Lenders' Adequate Protection Claims but shall otherwise have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, whether incurred in any of the Cases or any Successor Case;

iii. The Debtors shall provide the Existing Second Lien Agent with any written financial information or periodic reporting that is provided to, or required to be provided to, the Existing First Lien Agent; and

iv. Subject to and effective only upon entry of a Final Order, the Debtors shall provide for the inclusion of credit bidding rights in favor of the Existing Second Lien Secured Lenders, junior in all respects to the credit bidding rights provided to the Existing First Lien Secured Parties, in connection with the sale of any of the Debtors' assets, whether conducted pursuant to

Section 363 of the Bankruptcy Code, Section 1129(b) of the Bankruptcy Code or otherwise.

v. Notwithstanding anything herein to the contrary, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Existing Second Lien Secured Parties, subject to the terms and conditions of that certain Amended and Restated Intercreditor Agreement dated as of December 22, 2006 among the Existing First Lien Secured Parties and the Existing Second Lien Secured Parties, to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection at any time, provided, however, that such request to modify the grant of adequate protection provided hereby may not seek different or additional adequate protection in the form of cash, interest, fees or any other form of payment, and nothing herein shall affect the rights of any other party or entity to seek or oppose such modification of the grant of the adequate protection provided hereby. If any additional adequate protection claims, liens or other rights are awarded at any time, such claims, liens and/or other rights shall be at all times junior in all respects to the claims and liens granted to or for the benefit of the DIP Lenders and the Existing First Lien Lenders and shall not affect the priority, validity, binding nature, enforceability or perfection of any of such claims and liens granted to or for the benefit of the DIP Lenders and the Existing First Lien Lenders; provided, that the foregoing is without prejudice to the right of the Debtors (consistent with

the Debtors' stipulations herein) or any other party in interest, including the DIP Lenders, to challenge any such request.

18. ***Perfection of Post-petition Liens & Adequate Protection Liens.***

a. All liens granted or authorized pursuant to this Interim Order, including the Post-petition Liens, the First Lien Lenders' Adequate Protection Liens and the Second Lien Lenders' Post-petition Liens, to or for the benefit of the DIP Lenders, the Existing First Lien Secured Parties or the Existing Second Lien Lenders shall, pursuant to this Interim Order be, and hereby are, valid, enforceable and perfected, effective as of the date of this Order, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection, and all liens that may be created upon any deposit accounts or securities accounts shall, pursuant to this Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104 and 9-106 of the Uniform Commercial Code as in effect as of the date hereof in favor of the DIP Lenders; provided, that if the DIP Lenders, the Existing First Lien Secured Parties or the Existing Second Lien Lenders shall, in their sole discretion, choose to require the execution of and/or file (as applicable) such mortgages, financing statements, notices of liens and other similar instruments and documents, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded nunc pro tunc at the time and on the date of this Order. Each and every federal, state and local government agency or department is hereby directed to accept the entry by this Court of this Order as evidence of the validity, enforceability and perfection as of the date of this Order of the liens granted or authorized pursuant to this Order to or for the benefit of the DIP Lenders, the Existing First Lien Secured

Parties or the Existing Second Lien Lenders.

b. The Pre-petition Liens, the Post-petition Liens, the First Lien Lenders' Adequate Protection Liens and the Second Lien Lenders' Post-petition Liens shall not be: (a) subject to any lien that is avoided and preserved for the benefit of the Debtors' estate under section 551 of the Bankruptcy Code; or (b) subordinated to or made pari passu with any other lien under section 364(d) of the Bankruptcy Code or otherwise. No claim or lien having a priority superior to or pari passu with those granted by this Order with respect to the Post-petition Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction of the Post-petition Obligations in the manner provided in the DIP Loan Documents.

c. Subject to and effective only upon entry of a Final Order, neither the DIP Collateral, the DIP Lenders, the Existing First Lien Secured Parties nor the Existing Second Lien Lenders shall be subject to surcharge, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, by the Debtors or any other party in interest without the prior written consent of the DIP Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by such parties in this proceeding, including but not limited to, the funding of the Debtors' ongoing operations by the DIP Lenders. Subject to entry of the Final Order, the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived.

19. ***Carve-out Expenses.***

a. The Carve-Out Expenses shall be paid pursuant to the DIP Facility and shall be defined to mean: (a) the (i) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); and (ii) budgeted and unpaid professional fees and expenses of the Debtors and any official committee appointed in the Debtors' Cases both to the

extent incurred prior to the date of the delivery of a written notice delivered by the DIP Agent following the occurrence of an Event of Default expressly stating that the Carve-Out Expenses have been triggered, plus (b) after the date of the delivery of such notice, (i) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); and (ii) the professional fees and expenses incurred by the Debtors and any official committee appointed in the Debtors' Cases that are approved by the Court, in an aggregate amount not to exceed $425,000. Notice that the Carve-Out Expenses have been triggered shall be provided by the DIP Agent to counsel for the Debtors and lead counsel for any official committee appointed in the Debtors' Cases.

b. No Budget shall include, and no Carve-Out Expenses may be incurred or be available for any fees or expenses incurred by any party, including the Debtors, any official committee appointed in any of the Cases, or any of their professionals, in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings, contested matter, objection, other litigation, or discovery against the Existing First Lien Secured Parties, the Existing Second Lien Lenders, the DIP Lenders or their advisors, agents or subagents, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to, the obligations arising under the DIP Facility and the Pre-petition Transaction Documents and the liens and claims thereunder in favor of the Existing First Lien Agent for the benefit of the Existing First Lien Secured Parties, the Existing Second Lien Agent for the benefit of the Existing Second Lien Lenders, and the DIP Lenders provided, however, that an aggregate amount not to exceed $15,000 may be used by any official committee of creditors appointed in the Cases to investigate the foregoing.

c. Nothing herein shall constitute a waiver by the Existing First Lien Secured Parties, by the Existing Second Lien Lenders or by the DIP Lenders of their rights to object to the fees and expenses of any professional retained by the Debtors or an official committee appointed in any of the Cases, all such rights being fully reserved.

20. ***Limitation on Use of Collateral and DIP Facility Proceeds.*** Subject to to paragraph 19(b), amounts loaned or advanced under, or in connection with, the DIP Facility, any and all proceeds of collateral and all existing and future cash collateral may not be used, directly or indirectly, by the Debtors, any official committee appointed in any of the Cases, or any other person or entity to: (a) object to, contest in any manner, or raise any defenses to, the validity, perfection, priority, extent, amount or enforceability of the DIP Facility, any DIP Loan Document, any Post-petition Obligation, any Post-petition Lien or Super-priority Claim; (b) assert any claims or causes of action against the Existing First Lien Secured Parties, the Existing Second Lien Lenders, the DIP Lenders or their respective advisors, agents and sub-agents, including discovery in anticipation thereof, or in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings, contested matter, objection, other litigation or discovery involving the DIP Lenders, the Existing First Lien Secured Parties or the Existing Second Lien Lenders; (c) prevent, hinder or otherwise delay the Existing First Lien Secured Parties', the Existing Second Lien Lenders' or the DIP Lenders' assertion, enforcement or realization on Pre-petition Collateral or DIP Collateral, as applicable, in accordance with the DIP Loan Documents, the Pre-petition Transaction Documents or this Order; (d) seek to modify any of the rights granted to the DIP Lenders, the Existing First Lien Secured Parties or the Existing Second Lien Lenders hereunder, under the DIP Loan Documents or the Pre-petition Transaction Documents, in each of the foregoing cases without such parties' prior written consent; (e) pay

any amount on account of any claims arising prior to the Petition Date unless such payments are (1) approved by an Order of this Court and (2) in accordance with the Budget; (f) seek authorization, or support any other person or entity seeking authorization, to use any Cash Collateral without the consent of the DIP Lenders; or (g) obtain a lien senior to, or on a parity with, the liens of the DIP Lenders in any DIP Collateral or any portion thereof.

21. ***Perfection Maintenance***. To the extent the Existing First Lien Agent, in its role as agent under the Pre-petition First Lien Transaction Documents or the Existing Second Lien Agent, in its role as agent under the Pre-petition Second Lien Transaction Documents is the secured party or is listed as loss payee or additional insured under any Pre-petition Transaction Document, the DIP Lenders, are also deemed to be the secured party or loss payee in that capacity and shall act in that capacity and distribute any proceeds recovered or received first, for its benefit in accordance with the DIP Loan Documents, second, subsequent to indefeasible payment in full of all DIP Obligations in cash, for the benefit of the Existing First Lien Secured Parties under the Pre-petition First Lien Transaction Documents and third, subsequent to indefeasible payment in full of all Pre-Petition First Lien Obligations in cash, for the benefit of the Existing Second Lien Lenders under the Pre-petition Second Lien Transaction Documents.

22. ***Preservation of Rights***.

a. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the DIP Lenders or the Existing First Lien Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, any right of the DIP Lenders or the Existing First Lien Secured Parties to: (1) request modification of the automatic stay of section 362 of the Bankruptcy Code; (2) request dismissal of any of the Cases,

conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers); or (3) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (b) subject to the terms and conditions of that certain Amended and Restated Intercreditor Agreement dated as of December 22, 2006 among the Existing First Lien Secured Parties and the Existing Second Lien Lenders, any of the rights of the Existing Second Lien Lenders under the Bankruptcy Code or under non-bankruptcy law or (c) subject to the terms and conditions of any applicable agreements, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lenders, the Existing First Lien Secured Parties or the Existing Second Lien Lenders.

b. The Post-petition Obligations, the Pre-petition Obligations and the First Lien Lenders' Adequate Protection Obligations, and the claims and liens granted to or for the benefit of the DIP Lenders, the Existing First Lien Secured Parties and the Existing Second Lien Lenders pursuant to this Interim Order and the other DIP Loan Documents, are not subject to any setoff or reduction of any kind, including, without limitation, under section 502(d) of the Bankruptcy Code, and shall not be discharged by the entry of an order: (a) confirming a chapter 11 plan in any of the Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waives such discharge); or (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code. Under no circumstances shall any chapter 11 plan in any of the Cases be confirmed or become effective unless such plan provides that the Post-petition Obligations shall be paid in full in cash and satisfied in the manner provided in the DIP Loan Documents on or before the effective date of such plan.

c. Based upon the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the commitments to extend DIP

Loans contemplated by this Order, in the event that any or all of the provisions of this Interim Order or any other DIP Loan Documents, including the Final Order, are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any lien or claim authorized or created hereby or thereby or any Post-petition Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment or vacation, any Post-petition Obligations incurred and any claim granted to the DIP Lenders hereunder or under the other DIP Loan Documents arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Interim Order and the other DIP Loan Documents and the DIP Lenders shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein and therein, with respect to any such Post-petition Obligations.

d. The validity, enforceability, priority or amount of any of the claims and liens granted to or for the benefit of the DIP Lenders under this Interim Order or any other DIP Loan Documents with respect to the Post-petition Obligations shall not be affected by any finding or order of this Court or any other court regarding any Existing First Lien Secured Party, any Existing Second Lien Lender or Pre-petition Liens, including, without limitation, any order of this Court or any other Court invalidating any Pre-petition Obligation or Pre-petition Liens.

e. To the extent that any Post-petition Obligations remain unpaid, any amounts disgorged by the Existing First Lien Secured Parties or the Existing Second Lien Lenders in respect of any of the Pre-petition Obligations (whether such amounts were received by the Existing First Lien Secured Parties or the Existing Second Lien Lenders prior or subsequent to the Petition Date) shall upon such disgorgement be immediately delivered by the Debtors to the

DIP Lenders to be applied to repay the Post-petition Obligations in accordance with the terms of the DIP Loan Documents.

23. ***Release.***

a. Subject to the entry of a Final Order, the Debtors hereby forever release, waive and discharge each Existing First Lien Secured Party and Existing Second Lien Lender, together with their respective officers, directors, employees, agents, sub-agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "**Released Parties**"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part: (a) the Pre-petition Transaction Documents; (b) the Pre-Petition Liens, or (c) Pre-petition Obligations including, without limitation, any claims or defenses as to the extent, validity, priority or perfection of the Pre-petition Liens or Pre-petition Obligations, "lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any other claims and causes of action and any resulting subordination or recharacterization of any payments made to any Existing First Lien Secured Party pursuant to this Order (all such claims, defenses and other actions described in this paragraph are collectively defined as the "**Claims and Defenses**"). Nothing contained in this subparagraph shall affect the rights of any official committee appointed in any of these Cases or any other party in interest to undertake any action with respect to, including, without limitation, any investigation or prosecution of, Claims and Defenses that is permitted in the other subparagraphs of this paragraph.

b. The Debtors' Stipulations and the releases set forth in paragraph 23(a) above shall be binding upon the Debtors in all circumstances. The Debtors' Stipulations and the releases set forth in paragraph 23(a) above shall be binding upon all other parties in interest, including,

without limitation, any official committee of unsecured creditors and any examiner or trustee appointed in any of the Cases, unless such official committee, examiner, trustee or any such party files a complaint pursuant to Bankruptcy Rule 7001 seeking to invalidate, subordinate or otherwise challenge the Debtors' Stipulations, Pre-petition Liens or the Pre-petition Obligations; provided, that any such complaint must be filed in this Court within seventy-five (75) days from the engagement of counsel for any official committee of unsecured creditors or, if no counsel or no official committee of unsecured creditors is appointed, within ninety (90) days of the Petition Date (the "**Challenge Deadline**"); provided, further, that if any examiner or trustee is appointed in the Cases prior to the Challenge Deadline as defined above, then the Challenge Deadline, solely with respect to any such examiner or trustee, shall be seventy-five (75) days from the appointment of such examiner or trustee. If, prior to the Challenge Deadline, no such complaint is filed by any official committee of unsecured creditors, or by any trustee or examiner, or if such complaint is timely filed and then subsequently dismissed, then any and all Claims and Defenses against any of the Released Parties shall be, without further notice or order of the Court, forever relinquished, released and waived as to such committee, trustee or examiner and all other persons and entities. If, prior to the Challenge Deadline, such a complaint is timely filed by any official committee of unsecured creditors, or by any trustee or examiner, any and all Claims and Defenses against any of the Released Parties shall be immediately and without further action forever relinquished, released and waived as to the party that asserts such Claims and Defenses and every other person or entity, except with respect to Claims and Defenses that are expressly asserted in such complaint.

c. If no such complaint as to any Pre-petition Lien, the Pre-petition Obligations, the Pre-petition Transaction Documents or the Released Parties is filed before the Challenge

Deadline, or if such complaint is timely filed and then subsequently dismissed, then, without the requirement or need to file any proof of claim with respect thereto: (a) the Pre-petition Obligations shall constitute allowed claims for all purposes in the Cases and any Successor Case; (b) the Pre-petition Liens shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination (except for the subordination thereof to the Post-petition Liens and as otherwise specified in this Order and the DIP Loan Documents, as applicable) or avoidance for all purposes in the Cases and any Successor Case; (c) the release of the Claims and Defenses shall be binding on all parties in interest in the Cases and any Successor Case, and (d) the Pre-petition Obligations, the Pre-petition Liens, releases of the Claims and Defenses against the Released Parties, and prior payments on account of or with respect to the Pre-petition Obligations, respectively, not subject to any such complaint shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor. Nothing in this Interim Order shall confer or deny standing upon any official committee appointed in any of these Cases or any other person or entity to bring, assert, commence, continue, prosecute or litigate the Claims and Defenses against any Released Party.

24. ***Survival of Certain Rights***. Notwithstanding anything herein or in any other DIP Loan Documents, upon the occurrence of the DIP Facility Termination Date (as defined in the DIP Loan Documents), all of the rights, remedies, benefits and protections provided: (i) to the DIP Lenders under this Interim Order and the other DIP Loan Documents; and (ii) to the Existing First Lien Secured Parties and the Existing Second Lien Lenders under this Interim Order and the Pre-petition Transaction Documents, shall survive such DIP Facility Termination Date (as defined in the DIP Loan Documents); provided, however, that all of the obligations of

the Debtors under the DIP Loan Documents shall terminate on the Discharge Date (as defined in the DIP Loan Documents). Upon such DIP Facility Termination Date (as defined in the DIP Loan Documents), the principal of and all accrued interest and fees and all other Post-petition Obligations shall be immediately due and payable and the DIP Lenders shall have all other rights and remedies provided in this Order, the other DIP Loan Documents and applicable law.

25. ***Rights Upon Case Dismissal.*** Until all obligations and indebtedness owing to the DIP Lenders shall have been paid in full in cash and satisfied in the manner provided in the DIP Loan Documents and this Interim Order, the Debtors shall not seek an order dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that: (i) the claims and liens granted pursuant to this Interim Order to or for the benefit of the DIP Lenders shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all obligations in respect thereof shall have been paid in full in cash and satisfied in the manner provided in the DIP Loan Documents (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the claims and liens granted pursuant to this Interim Order to or for the benefit of the Existing First Lien Secured Parties and the Existing Second Lien Lenders shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (iii) that prior to dismissal, the Debtors shall deliver to the DIP Lenders and record, at the Debtors' cost, financing statements, mortgages and other documentation evidencing perfected liens in the DIP Collateral; and (iv) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

26. ***Events of Default.***

a. The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Lenders to exercise, upon the occurrence and during the continuation of any Event of Default (as defined in the DIP Facility), all rights and remedies provided for in the DIP Loan Documents, and to take any or all of the following actions: (a) terminate the Debtors' use of Cash Collateral and cease to make any loans or advances to the Debtors other than with respect to Carve-Out Expenses (as defined below) to the extent permitted by paragraph 19 of this Interim Order and the DIP Loan Documents; (b) declare all Post-petition Obligations to be immediately due and payable; (c) terminate any unfunded commitments under the proposed DIP Facility other than with respect to Carve-Out Expenses (as defined below) to the extent permitted by paragraph 19 of this Interim Order and the DIP Loan Documents; (d) set off and apply immediately any and all amounts in accounts maintained by the Debtors with the DIP Lenders against the Post-petition Obligations, and otherwise enforce rights against the DIP Collateral in the possession of the DIP Lenders for application towards the Post-petition Obligations; and (e) take any other actions or exercise any other rights or remedies permitted under this Order, the other DIP Loan Documents or applicable law to effect the repayment and satisfaction of the Post-petition Obligations; provided, however, that the DIP Lenders shall provide five (5) business days written notice (by facsimile, telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtors and counsel to any official committee appointed in any of the Cases of such Event of Default prior to exercising any enforcement rights or remedies in respect of the DIP Collateral (other than the rights described in clauses (a), (b), and (c) above (to the extent they might be deemed remedies in respect of the DIP Collateral) and other than with respect to freezing any deposit accounts or securities accounts);

provided further, that the Debtors shall have the right to seek continuation of the automatic stay during such five (5) business days period.

b. Subject to entry of a Final Order, no holder of a lien primed by this Interim Order or granted by the Debtors as adequate protection shall be entitled to object on the basis of the existence of any such lien to the exercise by the DIP Lenders of its rights and remedies under the DIP Loan Documents or under applicable law to effect satisfaction of the Post-petition Obligations or to receive any amounts or remittances due hereunder or under the other DIP Loan Documents. The DIP Lenders shall be entitled to apply the payments or proceeds of the DIP Collateral in accordance with the provisions of this Interim Order and the other DIP Loan Documents and the DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or otherwise.

c. The rights and remedies of the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lenders may have under the other DIP Loan Documents or otherwise. The failure or delay by the (a) the DIP Lenders to seek relief or otherwise exercise their rights and remedies under this Interim Order or any other DIP Loan Documents or (b) the Existing First Lien Secured Parties or the Existing Second Lien Lenders to exercise their rights and remedies under this Interim Order shall not constitute a waiver of any of the rights of the DIP Lenders, Existing First Lien Secured Parties or the Existing Second Lien Lenders hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against any party or DIP Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other party and/or DIP Collateral.

27. ***Proofs of Claim***. The Existing First Lien Lenders and the Existing Second Lien Lenders will not be required to file proofs of claim in any of the Debtors cases. The

acknowledgment by the Debtors of the Pre-petition Obligations, Pre-petition Liens, rights, priorities and other protections grated to or in favor of the Existing First Lien Lenders and the Existing Second Lien Lenders as set forth herein shall be deemed a timely failed proof of claim on behalf of the Existing First Lien Lenders and the Existing Second Lien Lenders in each of the Debtors cases with respect to the Pre-petition Obligations.

28. *Notice*. The Debtors shall, on or before January 31, 2011, serve by United States mail, first class postage prepaid, copies of the Motion, this Interim Order and a notice of the Final Hearing (the "**Final Hearing Notice**") to be held on March 1, 2011, at 11:00am (the "**Final Hearing Date**") to consider entry of the Final Order on the Interim Notice Parties. Copies of the Motion, this Interim Order and the Final Hearing Notice also shall be served upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by United States mail, first class postage prepaid, within the later of one business day following the receipt of such request and January 31, 2011. The Final Hearing Notice shall state that any party in interest objecting to the entry of the Final Order shall file written objections with the Court no later than ~~February 24~~ 4:00 pm on February 24, 2011, which objections shall be served so that the same are received on or before such date and time by: (a) Reed Smith LLP, 599 Lexington Avenue, New York, New York 10022; Attn: J. Andrew Rahl, Jr., Esq., counsel to the Debtors; (b) the Office of the United States Trustee, David Buchbinder, Esq., 844 N. King Street, Room 2207, Lockbox 35, Wilmington DE 19801; (c) Mayer Brown LLP, 71 South Wacker Drive, Chicago, IL 60606, Attn: J. Robert Stoll, Esq. and John J. Voorhees, Jr., Esq., counsel to the Existing First Lien Agent and the DIP Agent; (d) Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801, Attn: Steven K. Kortanek, Esq., co-counsel to the Existing First Lien agent and DIP Agent; and (e) Bingham McCutchen LLP, 399 Park Avenue, New York, New York 1002-4689, Attn: Katherine G.

Weinstein, Counsel to the Existing Second Lien Agent.

29. ***Binding Effect; Successors and Assigns***. This Interim Order is hereby deemed effective immediately pursuant to Federal Bankruptcy Rule of Procedure 6004(h). The provisions of this Interim Order shall be binding upon and inure to the benefit of each DIP Lenders, each Existing First Lien Secured Party and the Debtors and their successors and assigns, including any chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors in a Successor Case.

30. ***Conflict***. In the event that any provision of this Interim Order conflicts with any term of the other DIP Loan Documents, this Interim Order shall govern.

Jan. 28, 2011

U.S. Bankruptcy Judge