**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Summit Business Media Holding Company, *et al.*,[1] | Case No. 11-10231 (PJW) |
| | Jointly Administered |
| Debtors. | |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**DATED AS OF FEBRUARY 1, 2011**

The above captioned debtors and debtors-in-possession hereby submit their Joint Chapter

11 Plan of Reorganization dated as of February 1, 2011.

Dated: February 1, 2011         Respectfully submitted,
      Wilmington, Delaware

                                    REED SMITH LLP

                         By:  /s/ Kimberly E. C. Lawson
                            Kimberly E.C. Lawson (No. 3699)
                            Kathleen Murphy (No. 5215)
                            1201 Market Street, Suite 1500
                            Wilmington, DE 19801
                            Telephone: (302) 778-7500
                            Facsimile: (302) 778-7575
                            E-mail: klawson@reedsmith.com
                                        kmurphy@reedsmith.com

                                  - and -

---

[1] The Debtors in these Cases are: (i) Summit Business Media Holding Company (5547); (ii) Summit Business Media Intermediate Holding Company, LLC (5392); (iii) The National Underwriter Company (8770); (iv) Research Holdings, LTD. (5228); (v) Futures Magazine, Inc. (1102); (vi) NUCO Business Information, LLC (7364); (vii) Agent Media Corporation (3991); (viii) Judy Diamond Associates, Inc. (0517); and (ix) Mining INDABA, LLC (4592). Individual case numbers are available on reasonable request.

US_ACTIVE-105476196.1

J. Andrew Rahl, Jr., Esquire
599 Lexington Avenue
New York, NY  10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: arahl@reedsmith.com


Proposed Counsel for Summit Business
Media Holding Company, *et al.*, Debtors
and Debtors-in-Possession

US_ACTIVE-105476196.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| **Summit Business Media Holding Company,** *et al.,*[1] | ) Case No. 11-0231 (PJW) |
| | ) |
| Debtors. | ) **Jointly Administered** |

---

## JOINT PLAN OF REORGANIZATION OF SUMMIT BUSINESS MEDIA HOLDING COMPANY AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

---

REED SMITH LLP
J. Andrew Rahl, Jr., Esquire
599 Lexington Avenue
22nd Floor
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450



Counsel for the Debtors and Debtors-in-Possession

REED SMITH LLP
Kimberly E. C. Lawson, Esquire
Kathleen Murphy, Esquire
1201 Market Street
Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575



Counsel for the Debtors and Debtors-in-Possession

Dated: February 1, 2011

---

[1] The debtors and debtors-in-possession in these cases are: (i) Summit Business Media Holding Company (5547); (ii) Summit Business Media Intermediate Holding Company, LLC (5392); (iii) The National Underwriter Company (8770); (iv) Research Holdings, LTD. (5228); (v) Futures Magazine, Inc. (1102); (vi) NUCO Business Information, LLC (7364); (vii) Agent Media Corporation (3991); (viii) Judy Diamond Associates, Inc. (0517); and (ix) Mining INDABA, LLC (4592).

# TABLE OF CONTENTS

Page

**ARTICLE I. DEFINITIONS AND INTERPRETATION** ........................................................1

    **1.1**    **Scope of Definitions**...........................................................................................1

    **1.2**    **Definitions.**...........................................................................................................1

    **1.3**    **Rules of Interpretation.**....................................................................................10

**ARTICLE II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ..................12

    **2.1**    **Introduction**.......................................................................................................12

    **2.2**    **Classification of Claims and Equity Interests** ...............................................12

**ARTICLE III. TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS** ................................................................................................................12

    **3.1**    **DIP Facility Claims**..........................................................................................13

    **3.2**    **Administrative Expense Claims**......................................................................13

    **3.3**    **Priority Tax Claims** .........................................................................................13

    **3.4**    **Class 1: Pre-Petition First Lien Secured Claims**...........................................14

    **3.5**    **Class 2, *et seq*.: Other Secured Claims** .........................................................14

    **3.6**    **Class 3: Other Priority Claims** .......................................................................15

    **3.7**    **Class 4: Pre-Petition Second Lien Claims** .....................................................15

    **3.8**    **Class 5: General Unsecured Claims**................................................................16

    **3.9**    **Class 6: Intercompany Claims**........................................................................16

    **3.10**    **Class 7: Equity Interests in Summit**...............................................................16

    **3.11**    **Class 8: Equity Interests in All Debtors Other Than Summit**.......................16

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN**................................17

    **4.1**    **Presumed Acceptance of Plan**.........................................................................17

    **4.2**    **Voting Classes**..................................................................................................17

    **4.3**    **Acceptance by Impaired Classes of Claims** ...................................................17

4.4     Deemed Rejection of Plan ....................................................................17

4.5     Cramdown ...........................................................................................17

4.6     Continued Corporate Existence...........................................................17

4.7     Cancellation of Existing Securities and Agreements ...........................18

4.8     Issuance of New Equity Interests.........................................................18

4.9     Revesting of Assets ..............................................................................18

4.10    Rights of Action; Reservation of Rights ..............................................19

4.11    Effectuating Documents; Further Transactions ..................................19

4.12    Sources of Liquidity; Exit Credit Documents ......................................19

ARTICLE V. RELEASES AND INJUNCTIONS RELATED TO RELEASES ...................20

5.1     Exculpation...........................................................................................20

5.2     Releases by Debtors .............................................................................20

5.3     Releases by Holders of Claims and Equity Interests ...........................21

5.4     Injunction Related to Releases............................................................21

5.5     No Waiver .............................................................................................22

5.6     Deemed Consent ..................................................................................22

5.7     Survival of Indemnification Obligations to Personnel .......................22

ARTICLE VI. CORPORATE STRUCTURE OF THE REORGANIZED DEBTORS .......22

6.1     Corporate Action .................................................................................22

6.2     Corporate Structure of Reorganized Debtors......................................23

6.3     Board of Directors/Managers and Officers of Reorganized Debtors.............23

6.4     Indemnification of Directors and Officers...........................................24

6.5     NewCo Operating Agreement, Registration Rights Agreement and OpCo Operating Agreement ...............................................................24

ARTICLE VII. DISTRIBUTIONS UNDER THIS PLAN........................................................24

7.1     Distributions to Holders of Allowed Claims Only ..............................24

US_ACTIVE-104570948.13

7.2 Distribution Record Date .......................................................................25

7.3 Disbursing Agent ...................................................................................25

7.4 Rights and Powers of the Disbursing Agent ...........................................25

7.5 Delivery of Distributions .......................................................................25

7.6 Time Bar to Cash Payments....................................................................26

7.7 Fractional Shares ...................................................................................26

7.8 Set-Offs.................................................................................................26

**ARTICLE VIII. PROCEDURES FOR DISPUTED CLAIMS....................................26**

8.1 Resolution of Disputed Claims; Estimation of Claims ...........................26

8.2 No Distributions Pending Allowance .....................................................27

8.3 Distributions After Allowance ...............................................................27

**ARTICLE IX. EXECUTORY CONTRACTS .........................................................27**

9.1 Assumption of Executory Contracts and Unexpired Leases....................27

9.2 Cure of Defaults of Assumed Executory Contracts and Unexpired Leases ...28

9.3 Compensation and Benefit Programs .....................................................28

**ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND THE
EFFECTIVE DATE.............................................................................28**

10.1 Conditions Precedent to Confirmation ..................................................28

10.2 Conditions Precedent to the Effective Date............................................29

10.3 Waiver of Conditions to Confirmation and Effective Date......................30

10.4 Effect of Failure of Conditions of the Effective Date.............................30

**ARTICLE XI. EFFECT OF CONFIRMATION .....................................................30**

11.1 Discharge of Claims and Termination of Equity Interests ......................30

11.2 Binding Effect.......................................................................................31

11.3 Preservation of Insurance. .....................................................................31

11.4 Section 1146 Exemption. .......................................................................32

US_ACTIVE-104570948.13

**11.5**     **Compliance with Tax Requirements.** ...................................................................32

**11.6**     **Severability of Plan Provisions.** ...................................................................32

**11.7**     **Exemption from Securities Laws** ...................................................................33

**11.8**     **Allocation of Plan Distributions Between Principal and Interest.** ..................33

**ARTICLE XII. RETENTION OF JURISDICTION** ........................................................33

**12.1**     **Post Effective-Date Jurisdiction** ...................................................................33

**12.2**     **Jurisdiction Prior to the Effective Date** ........................................................35

**ARTICLE XIII. MISCELLANEOUS PROVISIONS** .......................................................35

**13.1**     **Substantial Consummation** ...........................................................................35

**13.2**     **Payment of Statutory Fees** ............................................................................35

**13.3**     **Retiree Benefits** ............................................................................................35

**13.4**     **Professional Fee Claims** ...............................................................................35

**13.5**     **Modifications and Amendments** ...................................................................35

**13.6**     **Corrective Action** .........................................................................................36

**13.7**     **Plan Revocation, Withdrawal or Non-Consummation** ...................................36

**13.8**     **Modification of Exhibits** ...............................................................................37

**13.9**     **Governing Law** .............................................................................................37

**13.10**    **Time** ..............................................................................................................37

**13.11**    **Section Headings** ..........................................................................................37

**13.12**    **Effectuating Documents and Further Transactions** .......................................37

**13.13**    **Successors and Assigns** .................................................................................37

**13.14**    **Notices** ..........................................................................................................38

US_ACTIVE-104570948.13

# EXHIBITS

Exhibit 1      List of Debtors

Exhibit 2      Amended Bylaws

Exhibit 3      Amended Certificates

Exhibit 4      NewCo Operating Agreement

Exhibit 5      Rejected Executory Contracts and Unexpired Leases

Exhibit 6      Restructuring Support Agreement

Exhibit 7      DIP Facility

Exhibit 8      Exit Credit Agreement

Exhibit 9      Exit Credit Documents

Exhibit 10     Management Incentive Plan

Exhibit 11     OpCo Operating Agreement

Exhibit 12     Registration Rights Agreement

US_ACTIVE-104570948.13

# JOINT PLAN OF REORGANIZATION OF SUMMIT BUSINESS MEDIA HOLDING COMPANY AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Summit Business Media Holding Company, a Delaware corporation ("Summit"), *et al.*, as debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases, hereby propose the following Joint Plan of Reorganization for the resolution of Claims against and Equity Interests in the Debtors pursuant to Section 1121(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* The Debtors are the proponents of this Plan within the meaning of Section 1129 of the Bankruptcy Code.

## ARTICLE I. DEFINITIONS AND INTERPRETATION

**1.1     Scope of Definitions.**  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires defined terms shall include the plural as well as the singular and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and neutral.

**1.2     Definitions.**   In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings ascribed to them in this Article I of the Plan:

**"Administrative Expense Claim"** means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, other than a Priority Tax Claim, a DIP Facility Claim or Other Priority Claim.

**"Allowed"** means, with respect to any Claim or Equity Interest, except as otherwise provided herein, any of the following: (a) the amount set forth on the Debtors' books and records, that is not otherwise the subject of a pending objection or dispute; (b) a Claim or Equity Interest that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated and as to which (i) the Debtors or any other party in interest have not filed an objection and (ii) no contrary Proof of Claim has been filed; (c) a Claim or Equity Interest that either is not a Disputed Claim or Equity Interest or has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation with the Debtors of the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court; (ii) in any stipulation with the Debtors of the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court; or (iii) in any contract, instrument, indenture or other agreement entered into or assumed in connection with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (f) a Claim or Equity Interest that is allowed pursuant to the terms of the Plan.

**"Allowed Interest Rate"** means, with respect to Pre-Petition First Lien Secured Loans, the applicable default rate of interest under the Pre-Petition First Lien Credit Agreement (including LIBOR pricing options available in accordance with the Pre-Petition First Lien Credit Agreement).

**"Amended Bylaws"** means the amended and restated bylaws or operating agreement, as appropriate, of each of the Reorganized Debtors, other than Summit-Intermediate, in the form attached hereto as Exhibit 2.

**"Amended Certificate"** means the amended and restated certificate of incorporation or organization or formation, as appropriate, of each of the Reorganized Debtors in the form attached hereto as Exhibit 3.

**"Ares"** means Ares Capital Corporation.

**"Bankruptcy Code"** means Title 11 of the United States Code, as amended from time to time, as applicable to the Debtors' Reorganization Cases.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Debtors' Reorganization Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as amended from time to time, as applicable to the Debtors' Reorganization Cases, and any Local Rules of the Bankruptcy Court, as applicable to the Debtors' Reorganization Cases.

**"BMO"** means Bank of Montreal, Chicago Branch.

**"Business Day"** means any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or any other day on which banking institutions in New York, NY are required or authorized to close by law or executive order.

**"Cash"** means legal tender of the United States of America and cash equivalents, including but not limited to bank deposits, checks and other similar items.

**"Causes of Action"** means, without limitation, any and all claims, causes of action, demands, rights, actions, suits, damages, injuries, remedies, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known, unknown, accrued or to accrue, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or under any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise.

**"Claim"** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

**"Claims Bar Date"** means the bar date for objecting to proofs of claim.

**"Claims Objection Bar Date"** means the bar date for objecting to proofs of claim, which date shall be set by order of the Bankruptcy Court, provided that the Debtors and/or the Reorganized Debtors may seek additional extensions of this date from the Bankruptcy Court.

US_ACTIVE-104570948.13

**"Class"** means a group of substantially similar Claims or Equity Interests classified by the Plan pursuant to Section 1122(a)(1) of the Bankruptcy Code.

**"Class A Units"** means the "Class A Units" as defined in and to be issued pursuant to the NewCo Operating Agreement.

**"Class A/B/C Units"** means, collectively, the Class A Units, Class B Units and Class C Units.

**"Class B Units"** means the "Class B Units" as defined in and to be issued pursuant to the NewCo Operating Agreement.

**"Class C Units"** means the "Class C Units" as defined in and to be issued pursuant to the NewCo Operating Agreement.

**"Class E Units"** means the "Class E Units" as defined in and to be issued pursuant to the NewCo Operating Agreement.

**"Class 5 Recovery"** means $100,000 in Cash to be set aside by the Debtors for the payment of the aggregate of Allowed Class 5 Claims.

**"Collateral"** means any property or interest in property of the estate of any Debtor subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**"Confirmation Date"** means that date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Debtors' Reorganization Cases.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**"Cure Payment"** means payment on an Allowed Claim arising in connection with the Debtors' obligation under Section 365(b)(1)(A) or (B) of the Bankruptcy Code relating to an assumed executory contract or unexpired lease.

**"Debtors"** means Summit and its affiliated debtors listed on Exhibit 1 hereto.

**"Debtors' Reorganization Cases"** means the chapter 11 cases commenced by the Debtors in the Bankruptcy Court.

**"DIP Agent"** means BMO, in its capacity as administrative agent under the DIP Facility.

**"DIP Facility"** means the Senior Secured Superpriority Debtor-in-Possession Credit Agreement (as amended, supplemented or otherwise modified from time to time) to be entered into by and among the Debtors, the DIP Agent, and the DIP Lenders, in the form attached hereto as Exhibit 7, together with the exhibits, schedules and annexes attached thereto.

US_ACTIVE-104570948.13

**"DIP Facility Claim"** means any Claim against any of the Debtors arising under, in connection with or related to the DIP Facility, the DIP Order, or the DIP Obligations, including all interest, fees, expenses and other amounts payable thereon.

**"DIP Lenders"** means, collectively, the financial institutions from time to time party to the DIP Facility as "Lenders" thereunder, including any predecessors or successors and assigns, in each case, in their respective capacities as such.

**"DIP Obligations"** means any "Obligations", as defined in the DIP Facility, including credit extended in respect of overdrafts and related liabilities and other depository, treasury, and cash management services and other clearing services provided by BMO or its affiliates.

**"DIP Order"** means any interim order or Final Order approving the DIP Facility.

**"Disbursing Agent"** means any entity (including any Debtor) that acts in the capacity as a Disbursing Agent under the Plan.

**"Disclosure Statement"** means the disclosure statement filed in connection with the Plan, together with the exhibits, schedules and annexes attached thereto.

**"Disputed Claim or Equity Interest"** means a Claim or Equity Interest, or any portion thereof: (a) listed on the Schedules, as unliquidated, disputed or contingent; (b) that is the subject of an objection or request for estimation filed or is otherwise disputed by any of the Debtors or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (c) that is in excess of the amount scheduled as other than disputed, contingent or unliquidated or (d) that is otherwise disputed by any of the Debtors or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved or overruled by Final Order.

**"Distribution Record Date"** means the record date for purposes of making any distribution under the Plan on account of Allowed Claims and Equity Interests, which shall be as of the close of business on the Confirmation Date or other such date prior to the Effective Date as may be designated in the Confirmation Order.

**"Effective Date"** means the first Business Day on or after the Confirmation Date on which all the conditions precedent to the effectiveness of the Plan have been satisfied or waived in accordance with the provisions of the Plan.

**"Equity Interest"** means any equity interest in any of the Debtors, including, but not limited to, all issued, unissued, authorized or outstanding limited liability company interests, membership interests, units, shares or stock (including common stock or preferred stock), together with any warrants, options or contract rights to purchase or acquire such interest at any time.

**"Existing First Lien Credit Documents"** means the Pre-Petition First Lien Credit Agreement, the Pre-Petition First Lien Security Agreement, all other Pre-Petition First Lien Security Documents, all other "Loan Documents", as defined in the Pre-Petition First Lien Credit Agreement, and all other documentation executed in connection with any of the foregoing, as such documents may have been amended, supplemented or otherwise modified.

**"Existing Second Lien Credit Documents"** means the Pre-Petition Second Lien Credit Agreement and all other "Loan Documents", as defined in the Pre-Petition Second Lien Credit Agreement, and all other documentation executed in connection with any of the foregoing, as such documents may have been amended, supplemented or otherwise modified.

**"Exit Borrower"** means The National Underwriter Company, an Ohio corporation, from and after the Effective Date.

**"Exit Credit Agreement"** means a Credit Agreement, in the form attached as Exhibit 8 hereto, together with the exhibits, schedules and annexes attached thereto.

**"Exit Credit Documents"** means the "Loan Documents" as defined in the Exit Credit Agreement. For the avoidance of doubt, the term "Exit Credit Documents" shall include (a) the Exit Credit Agreement and (b) the notes, the mutual release agreement, the guaranty agreements pursuant to which the Reorganized Debtors (other than the Exit Borrower) and NewCo LLC will guarantee the obligations of the Exit Borrower under the Exit Credit Agreement, and the security agreements, intellectual property security agreements, deposit account control agreements, and mortgages pursuant to which each of the Reorganized Debtors and NewCo LLC will grant the Secured Parties (as defined in the Exit Credit Agreement) a valid and perfected first priority lien and security interest in substantially all of its assets, in each case under this clause (b) consistent with the terms and conditions of the Exit Credit Agreement and in the forms attached hereto as Exhibit 9, and each other agreement, certificate, document, or instrument delivered in connection with the Exit Credit Agreement, from time to time, together with the exhibits, schedules and annexes attached thereto.

**"Final Order"** means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction entered by the Clerk of the Bankruptcy Court or such other court on the docket in the Debtors' Reorganization Cases or the docket of such other court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

**"General Unsecured Claim"** means any Claim against any of the Debtors that is not an Administrative Expense Claim, an Other Priority Claim, a Priority Tax Claim, a Pre-Petition First Lien Secured Claim, a Pre-Petition Second Lien Claim, a DIP Facility Claim, an Other Secured Claim, or an Intercompany Claim.

**"Indemnification Obligations"** shall have the meaning set forth in Section 5.7 of the Plan.

US_ACTIVE-104570948.13

**"Insurance Policy"** means any liability insurance policy or other insurance policy that was issued to a Debtor or Debtors or under which the Debtor(s) has or claims a right to insurance coverage.

**"Insurer"** means any insurance company or insurance carrier that issued an Insurance Policy.

**"Intercompany Claim"** means any Claim held by a Debtor against another Debtor, including without limitation: (a) any account reflecting intercompany book entries by a Debtor with respect to another Debtor, (b) any Claim not reflected in such book entries that is held by a Debtor against another Debtor, and (c) any derivative Claim asserted by or on behalf of one Debtor against another Debtor.

**"Lien"** has the meaning set forth in Section 101(37) of the Bankruptcy Code.

**"Management Incentive Plan"** means a Management Incentive Plan in the form attached as Exhibit 10 hereto, together with the exhibits, schedules and annexes attached thereto.

**"NewCo LLC"** means the limited liability company to be owned by the Pre-Petition First Lien Secured Parties, the Revolving Lenders, the Pre-Petition Second Lien Lenders, and certain officers and directors of the Reorganized Debtors, which limited liability company will receive all of the New Summit Equity.

**"NewCo LLC Equity"** means the new limited liability company interests of NewCo LLC.

**"NewCo Operating Agreement"** means the operating agreement, to be dated as of the Effective Date, among the Pre-Petition First Lien Secured Parties, Revolving Lenders, Pre-Petition Second Lien Lenders, and certain officers and directors of the Reorganized Debtors, which will govern the governance and other terms of NewCo LLC, in the form attached hereto as Exhibit 4.

**"New Equity"** means, as applicable, the new stock, new membership interests or new limited liability company interests of each of the Reorganized Debtors.

**"New Summit Equity"** means the new stock of Reorganized Summit.

**"Objection Deadline"** means the date and time to be set forth in an order of the Bankruptcy Court by which a creditor or interest holder or other party in interest must file an objection to confirmation of the Plan.

**"OpCo Operating Agreement"** means the operating agreement, to be dated as of the Effective Date, of Reorganized Summit which will govern the governance and other terms of Summit-Intermediate, in the form attached hereto as Exhibit 11.

**"Other Priority Claim"** means any Claim (other than an Administrative Expense Claim, Priority Tax Claim, or DIP Facility Claim) entitled to priority of payment under Section 507(a) of the Bankruptcy Code.

**"Other Secured Claim"** means a Secured Claim other than a DIP Facility Claim, a Pre-Petition First Lien Secured Claim, or a Pre-Petition Second Lien Claim.

US_ACTIVE-104570948.13

**"Person"** means an individual, partnership, corporation, business trust, estate, limited liability company, limited liability partnership, joint stock company, trust, unincorporated association, joint venture or other entity or any government, governmental agency or any subdivision, department or other instrumentality thereof.

**"Petition Date"** means the date on which the Debtors filed voluntary petitions with the Bankruptcy Court commencing the Debtors' Reorganization Cases.

**"Plan"** means the joint chapter 11 plan of the Debtors, including all exhibits, supplements, appendices and schedules thereto, either in its or their present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms of the Plan.

**"Plan Documents"** means the agreements, instruments and documents to be executed, delivered and/or performed in conjunction with the consummation of the Plan, including without limitation, (a) the Plan, (b) the Plan Supplement, (c) the Amended Certificates, (d) the Amended Bylaws, (e) the NewCo Operating Agreement, (f) the Exit Credit Documents, (g) the Management Incentive Plan, and (h) the OpCo Operating Agreement.

**"Plan Supplement"** means the compilation of documents that the Debtors shall file with the Bankruptcy Court in support of the Plan on or before the date that is five days prior to the confirmation hearing.

**"Potentially Insured Claim"** means a Claim against a Debtor or Debtors that was or could have been asserted in, and is therefore subject to discharge in, the Debtors' Reorganization Cases and that is alleged to be covered, in whole or in part, by an Insurance Policy. "Potentially Insured Claims" are within the class of General Unsecured Claims. Claims for workers' compensation benefits are not included in the term "Potentially Insured Claims."

**"Pre-Petition First Lien Agent"** means BMO, in its capacity as administrative agent under the Pre-Petition First Lien Credit Agreement.

**"Pre-Petition First Lien Credit Agreement"** means that certain Amended and Restated First Lien Credit Agreement, dated as of July 6, 2007, by and among Summit-Intermediate, the Pre-Petition First Lien Secured Lenders, and the Pre-Petition First Lien Agent, as amended, supplemented or otherwise modified.

**"Pre-Petition First Lien Obligations"** means the "Obligations" as defined in the Pre-Petition First Lien Credit Agreement.

**"Pre-Petition First Lien Security Agreement"** means the "Security Agreement" as defined in the Pre-Petition First Lien Credit Agreement.

**"Pre-Petition First Lien Secured Lenders"** means the "Lenders" as defined in the Pre-Petition First Lien Credit Agreement, and their respective successors and assigns, in each case in their respective capacities as such.

US_ACTIVE-104570948.13

**"Pre-Petition First Lien Secured Loans"** means the "Loans" as defined in the Pre-Petition First Lien Credit Agreement.

**"Pre-Petition First Lien Secured Parties"** means the Pre-Petition First Lien Secured Lenders, the Pre-Petition First Lien Agent and the other "Secured Parties", as defined in the Pre-Petition First Lien Credit Agreement, and their respective successors and assigns, in each case, in their respective capacities as such.

**"Pre-Petition First Lien Secured Claims"** means any and all Claims of the Pre-Petition First Lien Secured Parties in respect of, in connection with or related to the Existing First Lien Credit Documents or the Pre-Petition First Lien Obligations, including all interest, fees, expenses and other amounts payable thereon.

**"Pre-Petition First Lien Security Documents"** means the Pre-Petition First Lien Security Agreement and all other documents granting security for any or all of the Pre-Petition First Lien Obligations, and all ancillary documents, in each case, as the same may be amended, supplemented or otherwise modified.

**"Pre-Petition Second Lien Agent"** means Ares, in its capacity as administrative agent under the Pre-Petition Second Lien Credit Agreement.

**"Pre-Petition Second Lien Claims"** means any and all Claims of the Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent in respect of, in connection with or related to the Existing Second Lien Credit Documents or the Pre-Petition Second Lien Obligations, including all interest, fees, expenses and other amounts payable thereon.

**"Pre-Petition Second Lien Credit Agreement"** means that certain Amended and Restated Second Lien Credit Agreement, dated as of July 6, 2007, by and among Summit-Intermediate, the Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent, as amended, supplemented or otherwise modified.

**"Pre-Petition Second Lien Lenders"** means the "Lenders" as defined in the Pre-Petition Second Lien Credit Agreement, and their respective successors and assigns, in each case in their respective capacities as such.

**"Pre-Petition Second Lien Obligations"** means the "Obligations" as defined in the Pre-Petition Second Lien Credit Agreement.

**"Priority Tax Claim"** means any Claim of a governmental unit of the kind entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, including a Secured Tax Claim.

**"Professional Fee Claims"** means any Claim of a professional person retained or otherwise entitled to be paid pursuant to Sections 327, 503(b) or 1103 of the Bankruptcy Code, for compensation, indemnification or reimbursement of costs and expenses relating to services performed on and after the Petition Date through and including the Effective Date.

**"Proof of Claim"** means any proof of claim that is filed by a holder of a Claim.

US_ACTIVE-104570948.13

**"Pro Rata Share"** means (a) with respect to an Allowed Claim in any Class, the ratio of (i) the amount of such Allowed Claim to (ii) the aggregate amount of all Allowed Claims in such Class and (b) with respect to an Allowed Equity Interest in any Class, the ratio of (i) the shares or units of such Equity Interest to (ii) the aggregate number of shares or units of all Equity Interests in such Class.

**"Reinstate"** means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the holder of such Claim in accordance with Section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; and (iii) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the holder of such Claim.

**"Related Persons"** means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective present and former members, partners, equity-holders, officers, directors, managers, employees, representatives, advisors (whether engaged prior to or subsequent to the Petition Date), attorneys (whether engaged prior to, on or subsequent to the Petition Date), agents and professionals, acting in such capacity, and any Person claiming by or through any of them; provided, however, that no Insurers shall constitute a Related Person.

**"Released Parties"** means (i) the Debtors, (ii) the Pre-Petition First Lien Agent, the Pre-Petition First Lien Secured Parties, the Pre-Petition Second Lien Agent, the Pre-Petition Second Lien Lenders, the DIP Agent, and the DIP Lenders, in each case, solely in their respective capacities as such, and (iii) the respective Related Persons of each of the foregoing persons and entities referenced in clauses (i)-(iii) above.

**"Registration Rights Agreement"** means the registration rights agreement, to be dated as of the Effective Date, in the form attached hereto as Exhibit 12.

**"Reorganized Summit"** means Summit from and after the Effective Date or a newly created corporation to which all of the assets or the equity of Summit shall be transferred on the Effective Date.

**"Reorganized Debtors"** means the Debtors from and after the Effective Date, or the newly created corporations to which all the assets or equity of the Debtors shall be transferred on the Effective Date.

**"Reorganized Affiliates"** means the Reorganized Debtors, other than Reorganized Summit.

**"Requisite Supporting First Lien Parties"** means "Requisite Supporting First Lien Parties" as defined in the Restructuring Support Agreement.

**"Requisite Supporting Second Lien Parties"** means "Requisite Supporting Second Lien Parties" as defined in the Restructuring Support Agreement.

US_ACTIVE-104570948.13

**"Restructuring Support Agreement"** means the Restructuring Support Agreement, dated as of January 24, 2011, a copy of which is attached hereto as Exhibit 6.

**"Revolving Commitment Amount"** means "Revolving Commitment Amount" as defined in the Exit Credit Agreement.

**"Revolving Lenders"** means "Revolving Lenders" as defined in the Exit Credit Agreement.

**"Schedules"** means the schedules of assets and liabilities, the list of holders of Equity Interests and the statement of financial affairs, as amended, to be filed by the Debtors, on the first day of the Debtors' Reorganization Cases or as soon thereafter as practicable under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

**"Second Lien Plan Distributions"** shall have the meaning set forth in Section 4.8 of the Plan.

**"Secured Claim"** means any Claim secured by a Lien on Collateral, which is not void or voidable under the Bankruptcy Code or any other applicable law, to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

**"Secured Tax Claim"** means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under Section 507(a)(8) of the Bankruptcy Code.

**"Summit"** means Summit Business Media Holding Company, a Delaware corporation.

**"Summit-Intermediate"** means Summit Business Media Intermediate Holding Company, LLC, a Delaware limited liability company.

**"Term Loan"** shall have the meaning set forth in Section 3.4 of the Plan.

**1.3     Rules of Interpretation.**

1.      In the event of an inconsistency, the provisions of the Plan shall control over the contents of the Disclosure Statement.  In the event of any conflict between the terms and provisions of this Plan and the terms and provisions in the Exit Credit Documents, the NewCo Operating Agreement, or the OpCo Operating Agreement, the terms and provisions of the Exit Credit Documents, the NewCo Operating Agreement, or the OpCo Operating Agreement, as applicable, shall control and govern.  The provisions of the Confirmation Order shall control over the contents of the Plan and all Plan Documents.

2.      For the purposes of the Plan:

(a)      any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be in such form or on such terms and conditions or in form or on terms and conditions satisfactory to the (i) the Debtors, (ii) the Requisite

US_ACTIVE-104570948.13

Supporting First Lien Parties, and, (iii) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties.

(b)     any reference in the Plan to an existing document, exhibit or schedule filed or to be filed means such document, exhibit or schedule, as it may have been or may be amended, modified or supplemented as of the Effective Date;

(c)     unless otherwise specified, all references in the Plan to "Sections," "Articles," "Exhibits" and "Schedules" are references to Sections, Articles, Exhibits and Schedules of or to the Plan, as the same they be amended, waived, supplemented or modified from time to time;

(d)     the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(e)     captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part or to affect interpretations of the Plan;

(f)     the rules of construction set forth in Bankruptcy Code Section 102 shall apply, except to the extent inconsistent with the provisions of this Article of the Plan; and

(g)     the word "including" means "including without limitation."

3.     Except with respect to claims required to be paid pursuant to Section 3.1, 10.2(c) or 10.2(g) of this Plan (which shall be paid when due), whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date or as soon as promptly as practicable thereafter.

4.     All Exhibits to the Plan are incorporated into the Plan and shall be deemed to be included in the Plan, regardless of when they are filed.

5.     Subject to the provisions of any contract, certificate, bylaws, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

6.     This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the Pre-Petition First Lien Agent for the Pre-Petition First Lien Secured Lenders, the Pre-Petition Second Lien Agent for the Pre-Petition Second Lien Lenders, and certain other creditors and constituencies. Each of the foregoing was represented by counsel who either (a) participated in the formulation and documentation of or (b) was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "contra proferentem" shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, any of the Plan Documents, or any contract, instrument, release, indenture or other agreement or document generated in connection herewith.

US_ACTIVE-104570948.13

# ARTICLE II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

## 2.1    Introduction

The classification and treatment of Claims and Equity Interests for purposes of this Plan is set forth below.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, DIP Facility Claims, Administrative Expense Claims and Priority Tax Claims have not been classified.  Other Claims and Equity Interests shall be included in a particular Class only to the extent such Claims or Equity Interests qualify for inclusion in such Class.

## 2.2    Classification of Claims and Equity Interests

Unimpaired and Unclassified Claims.

    (a)    DIP Facility Claims

    (b)    Administrative Expense Claims

    (c)    Priority Tax Claims

Description of the Classes.

    (d)    Class 1:  Pre-Petition First Lien Secured Claims (Impaired)

    (e)    Class 2:  Other Secured Claims (Unimpaired)

    (f)    Class 3:  Other Priority Claims (Unimpaired)

    (g)    Class 4:  Pre-Petition Second Lien Claims (Impaired)

    (h)    Class 5:  General Unsecured Claims (Impaired)

    (i)    Class 6:  Intercompany Claims (Unimpaired)

    (j)    Class 7:  Equity Interests in Summit (Impaired)

    (k)    Class 8:  Equity Interests in the Debtors other than Summit (Unimpaired)

## ARTICLE III.
## TREATMENT OF CLASSES OF CLAIMS AND
## EQUITY INTERESTS

Other than as specifically set forth herein, the treatment of and consideration to be received by holders of Claims or Equity Interests pursuant to this Article III shall be in full satisfaction, settlement, release and discharge of such holder's respective Claim or Equity Interest. Except as expressly set forth herein or in the Confirmation Order, such discharge shall not affect the liability of any other person or entity on, or the property of any other person or entity encumbered to secure payment of, any such Claim or Equity Interest; nor shall it affect the Reorganized Debtors' obligations pursuant to this Plan.

US_ACTIVE-104570948.13

## 3.1    DIP Facility Claims

DIP Facility Claims are unimpaired and unclassified claims.

The DIP Facility Claims shall be Allowed in full, including without limitation, (i) all Claims for unpaid principal, interest and other charges outstanding on the Effective Date and (ii) all Claims for fees and expenses and other charges provided for under the DIP Facility.  Except to the extent that a holder of an Allowed DIP Facility Claim and the Debtors, or the Reorganized Debtors, as the case may be, agree to a different treatment, on the Effective Date, each Allowed DIP Facility Claim shall be paid in full in Cash by wire transfer of immediately available funds from the proceeds of the revolving credit facility under the Exit Credit Documents.

## 3.2    Administrative Expense Claims

Administrative Expense Claims are unimpaired and unclassified claims.

Except to the extent that a holder of an Allowed Administrative Expense Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim will receive a distribution of Cash in an amount equal to such Allowed Administrative Expense Claim, without interest, on or as soon as practicable after (but in no event more than ninety (90) days after, unless extended by the Bankruptcy Court) the later of (i) the Effective Date; and (ii) the first Business Day after the date that is ten (10) Business Days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that (y) Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors (these Claims may include, without limitation, post-Petition Date salaries and other post-Petition Date benefits for employees, post-Petition Date rent for facilities and offices, amounts owed to vendors providing goods and services during the Debtors' Reorganization Cases and tax obligations incurred by the Debtors all in the ordinary course of business and after the Petition Date), as debtors or debtors-in-possession, may be paid in full and performed by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions and (z) Professional Fee Claims shall be paid in accordance with the applicable order of the Bankruptcy Court after filing a fee application, notice and a hearing pursuant to the procedures set forth in Section 13.4 hereof.

## 3.3    Priority Tax Claims

Priority Tax Claims are unimpaired and unclassified claims.

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, on account of such Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code and at the option of the Debtors, regular installment payments in Cash: (i) of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (ii) which total value shall include simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of interest determined under applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code; (iii) over a period

US_ACTIVE-104570948.13

ending not later than 5 years after the Petition Date; and (iv) in a manner not less favorable than the most favored nonpriority unsecured Claim provided for by the Plan (other than payments in Cash made to a Class of Creditors under section 1122(b) of the Bankruptcy Code). Each holder of an Allowed Secured Tax Claim shall retain the Lien securing its Allowed Secured Tax Claim as of the Effective Date until full and final payment of such Allowed Secured Tax Claim is made as provided herein, and upon such full and final payment, such Lien shall be deemed to have been satisfied and shall be null and void and unenforceable for all purposes.

**3.4     Class 1:  Pre-Petition First Lien Secured Claims**

Class 1 Claims are impaired. Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

On the Effective Date, the Pre-Petition First Lien Secured Claims shall be deemed Allowed, for all purposes of the Plan and the Debtors' Reorganization Cases, in an amount equal to all outstanding principal plus all unpaid interest accrued at the Allowed Interest Rate prior to the Petition Date, and all fees and expenses payable prior to the Petition Date in connection therewith in accordance with the terms of the Existing First Lien Credit Documents.

On the Effective Date, holders of Allowed Class 1 Claims (or, with respect to clause (b) below, their designated affiliates) will receive, in full and final satisfaction, settlement, release and discharge and in exchange for each such Allowed Class 1 Claim, (a) on the terms and conditions set forth in the Exit Credit Documents, and as set forth therein, a Pro Rata Share of participation in a $110 million first-priority first-lien term loan (the "Term Loan"), and (b) a Pro Rata Share of 94.7% of the Class A/B/C Units (with each holder (or designated affiliate) being entitled to choose Class A Units, Class B Units or Class C Units). The Class A/B/C Units will be entitled to a total of 94.44% of the distributions made with respect to NewCo LLC Equity, subject to dilution by, among other things, NewCo LLC Equity Interests issued to officers and directors of the Reorganized Debtors pursuant to the Management Incentive Plan, all as provided by Section 6.01 of the NewCo Operating Agreement.

The holders of Allowed Class 1 Claims will be required to execute the Exit Credit Agreement prior to receiving any Pro Rata Share of the Term Loan.

The Exit Credit Documents shall be executed, delivered and performed by the Reorganized Debtors in accordance with their terms, and all fees and expenses and other amounts provided for thereunder shall be paid promptly when due.

**3.5     Class 2, *et seq*.:  Other Secured Claims**

Class 2 Claims are not impaired. Holders of Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 2 Claims are not entitled to vote to accept or reject the Plan

Each Class 2 Claim consists of Other Secured Claims against the applicable Debtor. With respect to each Debtor, this Class will be further divided into subclasses designated by letters of the alphabet (Class 2A, Class 2B and so on), so that each holder of any Other Secured Claim against such Debtor is in a Class by itself, except to the extent that there are Other Secured

US_ACTIVE-104570948.13

Claims that are substantially similar to each other and may be included within a single Class, and except for a precautionary class of otherwise unclassified Other Secured Claims.

On the Effective Date, each Allowed Claim in Class 2 shall be, in full and final satisfaction, settlement, release and discharge and in exchange for each such Allowed Class 2 Claim, at the Debtors' option, (1) Reinstated, (2) satisfied by the Debtors' surrender of the collateral securing such Allowed Claim, (3) offset against, and to the extent of, the Debtors' claims against the holder of such Allowed Claim or (4) otherwise rendered not impaired, except to the extent that the Reorganized Debtors and such holder agree to a different treatment.

### 3.6    Class 3: Other Priority Claims

Class 3 Claims are not impaired.  Holders of Class 3 Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 3 Claims are not entitled to vote to accept or reject the Plan.

Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different treatment of such Allowed Other Priority Claim, each such holder will receive, in full and final satisfaction, settlement, release and discharge and in exchange for each such Allowed Class 3 Claim, one of the following treatments, as determined by the Debtors after consultation with the Pre-Petition First Lien Agent and upon the consent of the Requisite Supporting First Lien Parties, when such Claim becomes Allowed:

> (a)    the Debtors will pay the Allowed Class 3 Claim in full, without interest, in Cash on the Effective Date or as soon thereafter as is practicable; provided that Allowed Class 3 Claims representing obligations incurred in the ordinary course of business will be paid in full in Cash when such Allowed Class 3 Claims become due and owing in the ordinary course of business; or

> (b)    each such Allowed Class 3 Claim will be treated in any other manner so that such Claim shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

### 3.7    Class 4: Pre-Petition Second Lien Claims

Class 4 Claims are impaired.  Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

On the Effective Date, the Pre-Petition Second Lien Claims shall be deemed Allowed, for all purposes of the Plan and the Debtors' Reorganization Cases, in an amount equal to all outstanding principal plus all unpaid interest accrued prior to the Petition Date, and all fees and expenses payable in connection therewith prior to the Petition Date in accordance with the terms of the Existing Second Lien Credit Documents.

On the Effective Date, holders of Allowed Class 4 Claims (or, with respect to clause (b) below, their designated affiliates) will receive, in full and final satisfaction, settlement, release and discharge and in exchange for each such Allowed Class 4 Claim, (a) a Pro Rata Share of $1 million by wire transfer of immediately available funds and (b) a Pro Rata Share of the Class E

US_ACTIVE-104570948.13

Units.  The Class E Units will be entitled to a total of 5.56% of the distributions made with respect to NewCo LLC Equity, subject to dilution by, among other things, NewCo LLC Equity Interests issued to officers and directors of the Reorganized Debtors pursuant to the Management Incentive Plan, all as provided by Section 6.01 of the NewCo Operating Agreement.

**3.8      Class 5:  General Unsecured Claims**

Class 5 Claims are impaired.  Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

Holders of Allowed Class 5 Claims will receive, in full and final satisfaction, settlement, release and discharge and in exchange for each such Allowed Class 5 Claim, a Pro Rata Share of the Class 5 Recovery.

**3.9      Class 6:  Intercompany Claims**

Class 6 Claims are not impaired.  Holders of Class 6 Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 6 Claims are not entitled to vote to accept or reject the Plan.

The legal, equitable and contractual rights of the holders of Intercompany Claims are unimpaired by the Plan.  On or as soon as practicable after the Effective Date, and after consultation with and approval by the Pre-Petition First Lien Agent, with such approval not to be unreasonably withheld, all Intercompany Claims will either be Reinstated to the extent determined to be appropriate by the Debtors or Reorganized Debtors or adjusted, continued or capitalized, either directly or indirectly, in whole or in part.  Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Bankruptcy Court.

**3.10     Class 7:  Equity Interests in Summit**

Class 7 Equity Interests are impaired.

On the Effective Date, the Equity Interests in Summit shall be cancelled and be of no further force and effect.  Holders of such Equity Interests are not entitled to receive or retain any property or distribution under the Plan on account of any Class 7 Equity Interests.  Therefore, holders of Class 7 Equity Interests are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.  Holders of Class 7 Equity Interests are not entitled to vote to accept or reject the Plan.

**3.11     Class 8:  Equity Interests in All Debtors Other Than Summit**

Class 8 Equity Interests are not impaired.  The holders of Class 8 Equity Interests are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 8 Equity Interests are not entitled to vote to accept or reject the Plan.

US_ACTIVE-104570948.13

The legal, equitable and contractual rights of the holders of Equity Interests in any Debtor other than Summit are unimpaired the Plan. On the Effective Date, such Equity Interests shall be Reinstated.

## ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN

### 4.1 Presumed Acceptance of Plan

Classes 2, 3, 6 and 8 are not impaired under the Plan, and are, therefore, conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

### 4.2 Voting Classes

Classes 1, 4 and 5 are impaired under the Plan, and holders of Class 1, 4 and 5 Claims shall be entitled to vote to accept or reject the Plan.

### 4.3 Acceptance by Impaired Classes of Claims

Pursuant to Section 1126(c) of the Bankruptcy Code and except as otherwise provided in Section 1126(e) of the Bankruptcy Code, an impaired Class of Claims entitled to vote to accept or reject the Plan has accepted the Plan if the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

### 4.4 Deemed Rejection of Plan

Class 7 is impaired under the Plan and shall receive no property or distribution under the Plan on account of their Equity Interests and are, therefore, deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

### 4.5 Cramdown

The Debtors request Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept the Plan pursuant to Section 1126 of the Bankruptcy Code. The Debtors reserve the right to modify the Plan in accordance with Section 13.5 hereof to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

### 4.6 Continued Corporate Existence

The Reorganized Debtors will continue to exist as separate corporate entities or limited liability companies following confirmation and consummation of this Plan in accordance with the laws of their respective states of incorporation and pursuant to their respective certificates or articles of incorporation or organization and bylaws or limited liability company operating agreements in effect prior to the Effective Date, except to the extent that the Debtors' certificates or articles of incorporation or organization and bylaws or limited liability company operating agreements are amended or replaced pursuant to this Plan. On or as soon as practicable after the Effective Date, the Reorganized Debtors will issue new equity interests pursuant to Section 4.8 of this Plan. From and after the Effective Date, each of the Reorganized Debtors will be deemed a separate and distinct entity, properly capitalized, vested with all of the assets of such debtor as they

existed prior to the Effective Date and having the liabilities and obligations provided for under this Plan.

## 4.7    Cancellation of Existing Securities and Agreements

Except for purposes of evidencing a right to distributions under this Plan or as otherwise provided herein, on the Effective Date, (a) all agreements and other documents (other than the assumed executory contracts and unexpired leases) evidencing Claims or Equity Interests or rights of any holder of a Claim or Equity Interest against any of the Debtors or Reorganized Debtors, and (b) all notes and share certificates and other documents evidencing such Claims and Equity Interests and any agreements or guarantees related thereto will be canceled and terminated and deemed null and void, satisfied and discharged and of no force and effect as against any of the Debtors or the Reorganized Debtors without further act or action under any applicable agreement, law, regulation, order or rule except to the extent specifically provided otherwise herein.  Except as otherwise provided herein, all obligations of the Debtors and Reorganized Debtors under such agreements and other documents governing such Claims and Equity Interests, as the case may be, will be discharged.

## 4.8    Issuance of New Equity Interests

On or as soon as practicable after the Effective Date, the Reorganized Debtors shall issue all securities to be issued in accordance with the Plan, NewCo Operating Agreement, Management Incentive Plan and Exit Credit Agreement, including, without limitation, the NewCo LLC Equity and New Summit Equity, each of which shall be distributed as referenced in the Plan, NewCo Operating Agreement, Management Incentive Plan and Exit Credit Agreement. Notwithstanding the foregoing or anything to the contrary in the Plan, in the event that the Bankruptcy Court determines that the Pre-Petition Second Lien Claims are not Secured Claims and, therefore, are not entitled to any or all of the distributions described in Section 3.7 of this Plan (such distributions to which the holders of Pre-Petition Second Lien Claims are entitled, collectively, the "Second Lien Plan Distributions"), (a) the Reorganized Debtors shall issue all Second Lien Plan Distributions to the Pre-Petition First Lien Agent on behalf of the holders of Pre-Petition First Lien Secured Claims (in addition to all other distributions to be made to the holders of Pre-Petition First Lien Secured Claims pursuant to the Plan), and (b) the Pre-Petition First Lien Agent, on behalf of the holders of Pre-Petition First Lien Secured Claims, shall contribute to the holders of the Pre-Petition Second Lien Claims all such Second Lien Plan Distributions.

## 4.9    Revesting of Assets

Pursuant to Section 1141(b) of the Bankruptcy Code, all property of the respective estate of each Debtor, together with any property of each Debtor that is not property of its estate and that is not specifically disposed of pursuant to this Plan, or by order of the Bankruptcy Court, will revest in the applicable Reorganized Debtor on the Effective Date.  Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court.  As of the Effective Date, all property of each Reorganized Debtor will be free and clear of all Liens, Claims and Equity Interests except as specifically provided pursuant to this Plan, the Confirmation Order, and the Exit Credit Documents.

US_ACTIVE-104570948.13

### 4.10 Rights of Action; Reservation of Rights

Except as otherwise provided pursuant to this Plan or the Confirmation Order, or any other order of the Bankruptcy Court, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, and except with respect to the Released Parties to the extent set forth herein, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtors will reserve and retain and may enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) all rights, claims, Causes of Action, rights of set off, suits, proceedings or other legal or equitable defenses accruing to the Debtors or their estates pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including without limitation, any avoidance or recovery actions and, to the extent permissible under applicable non-bankruptcy law, any suits or proceedings for recovery under any policies of insurance issued to or on behalf of the Debtors or any judgment obtained on behalf of any of the Debtors.  Except as otherwise expressly set forth in this Plan or the Confirmation Order will be deemed to be a waiver or the relinquishment of any right or Causes of Action that the Debtors or the Reorganized Debtors may have or which the Debtors or the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against any of the Debtors, the Reorganized Debtors, their officers, directors, managers or representatives and (ii) the turnover of any property of any of the Debtors' or the Reorganized Debtors' estates.  This Plan provides that the Reorganized Debtors will be deemed the appointed representative to, and may pursue, litigate, compromise, settle, transfer or assign any such rights, claims, Causes of Action, suits or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their respective successors who hold such rights. Any person or entity defending against a Potentially Insured Claim, the Debtors, the Reorganized Debtors, and any Insurer shall have the right to assert all rights and defenses of the Debtors, both legal and equitable (including setoff or recoupment), with respect to any Potentially Insured Claims.

### 4.11 Effectuating Documents; Further Transactions

The chief executive officer, chief financial officer or any other appropriate officer of Summit or any applicable Debtor, as the case may be, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions herein.  The secretary or assistant secretary of Summit or any applicable Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

### 4.12 Sources of Liquidity; Exit Credit Documents

On or prior to the Effective Date, the Exit Credit Documents, in the forms attached hereto or as otherwise approved by (i) the Debtors, (ii) the Requisite Supporting First Lien Parties, and, (iii) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties shall become effective. On the Effective Date, the Revolving Lenders (or their designated affiliates) shall receive a Pro Rata Share of 5.3% of the Class A/B/C Units (with each

Revolving Lender (or designated affiliate) being entitled to choose Class A Units, Class B Units or Class C Units).

## ARTICLE V. RELEASES AND INJUNCTIONS RELATED TO RELEASES

### 5.1 Exculpation

The Debtors, the Reorganized Debtors and the other Released Parties shall have no liability to any Person for any act or omission in connection with, or arising out of, the Debtors' Reorganization Cases, the Disclosure Statement, this Plan, the solicitation of votes for and the pursuit of confirmation of this Plan, the formulation, preparation, implementation or consummation of this Plan or the transactions contemplated thereby, including the pre-petition and post-petition negotiations with respect thereto, the administration of this Plan or the property to be distributed under this Plan or the Debtors' Reorganization Cases or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan. All Causes of Action based upon or arising out of all of the foregoing will be forever waived and released by any Person as of the Effective Date; provided, however, that nothing in this section shall affect the liability (if any) of any Person that otherwise would result from any action or omission to the extent that such action or omission is determined in a Final Order to have constituted (i) a breach of any of its obligations under this Plan or any contract, release or other agreement or document entered into in connection herewith or (ii) intentional acts that constitute fraud or willful misconduct.

### 5.2 Releases by Debtors

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors, and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date of the Plan, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors and their estates, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or that could be asserted by or on behalf of the Debtors, the Reorganized Debtors or their estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors or their estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' Reorganization Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Debtors' Reorganization Cases, the negotiation, formulation or preparation of the Plan, the related Disclosure Statement, or related agreements, instruments or other documents, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a final and non-appealable order of a court of competent jurisdiction to constitute willful misconduct or gross negligence by such Released Party.

US_ACTIVE-104570948.13

### 5.3 Releases by Holders of Claims and Equity Interests

As of the Effective Date of the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, (i) each holder of a Claim that votes to accept the Plan, solely in its capacity as the holder of such Claim, and (ii) to the fullest extent permissible under applicable law, as such law may be extended or interpreted after the Effective Date, each person or entity (other than a Debtor), which has held, holds or may hold a Claim or Equity Interest in or relating to the Debtors and solely in its capacity as the holder of such Claim or Equity Interest, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtors, the Reorganized Debtors and the Released Parties from any and all Claims, Equity Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims, asserted or that could be asserted by or on behalf of any such holder, person or entity, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such holder, person or entity would have been legally entitled to assert in its own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Debtors' Reorganization Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Debtors' Reorganization Cases, the negotiation, formulation or preparation of the Plan, the related Disclosure Statement, any Plan Documents or related agreements, instruments or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a final and non-appealable order of a court of competent jurisdiction to constitute willful misconduct or gross negligence of such Released Party.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in Sections 5.2 and 5.3 of the Plan do not release (i) any Claims or liabilities assumed by any Reorganized Debtor pursuant to the Plan or any other Plan Documents or otherwise arising on or after the Effective Date under any of the Plan Documents or (ii) any post-Effective Date obligations of any party under the Plan or any other Plan Document.

### 5.4 Injunction Related to Releases

Except as provided in the Plan, the other Plan Documents or the Confirmation Order, as of the Confirmation Date, subject to the occurrence of the Effective Date, all Persons that have held, currently hold or may hold Claims or Equity Interests that (x) are subject to exculpation pursuant to Section 5.1, (y) have been released pursuant to Sections 5.2 and 5.3, or (z) are discharged pursuant to Section 11.1, are permanently enjoined from taking any of the following actions against the Debtors or their property, or any of the Released Parties, on account of Claims or Equity Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or

obligation due to the Debtors; and (v) commencing or continuing any action, in each case in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distribution pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 5.4.

## 5.5     No Waiver

The release set forth in this Plan does not limit, abridge or otherwise affect the rights of the Reorganized Debtors to enforce, sue on, settle or compromise the rights, claims and other matters retained by the Reorganized Debtors pursuant to this Plan.

## 5.6     Deemed Consent

By voting to accept this Plan or accepting any distribution directly under this Plan, each holder of a Claim will be deemed to the fullest extent permitted by applicable law to have specifically consented to the releases and injunctions set forth in this Article V.

## 5.7     Survival of Indemnification Obligations to Personnel

As to Causes of Action arising or relating to events taking place prior to, on and subsequent to the Petition Date, the Debtors shall defend, indemnify, reimburse or limit the liability of any of their respective directors, managers and officers who serve as directors, managers or officers on and after the Effective Date, including, without limitation, those directors, officers and managers who are listed in the Disclosure Statement, to the fullest extent permitted under applicable state law (collectively, the "Indemnification Obligations") for any liabilities asserted against such persons by reason of their service as directors, managers or officers of the Debtors, other than in respect of any claims conclusively determined to have arisen by virtue of fraud or willful misconduct. Such Indemnification Obligations will survive confirmation of this Plan, remain unaffected thereby and will not be discharged and shall, on the Effective Date, become obligations of the Reorganized Debtors; provided, that such indemnification, defense, reimbursement or limitation will be limited to the extent such directors, mangers or officers have been released pursuant to the Plan as Released Parties under this Plan and provided further that the Debtors shall be required to indemnify a director, manager or officer in connection with a proceeding (or part thereof) initiated by such director, manager or officer only if such proceeding (or part thereof) was authorized by the board of directors or managers of the applicable Debtor. Pursuant to this Plan and Bankruptcy Code Section 502(e), all contingent and unliquidated Claims of Debtors' respective current and former directors, managers, officers and employees for indemnification, defense or reimbursement of any liability shall be deemed expunged and withdrawn as of the Effective Date.

## ARTICLE VI. CORPORATE STRUCTURE OF THE REORGANIZED DEBTORS

## 6.1     Corporate Action

Each Reorganized Debtor will file its Amended Certificate, as appropriate, (each in such form as may be acceptable to (i) such Debtor, (ii) the Requisite Supporting First Lien Parties, and, (iii) to

the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties) with the Secretary of State of the jurisdiction of their respective organization on the Effective Date. Any filings or other actions to be taken with respect to the Reorganized Debtors will be done as soon as practicable on or after the Effective Date.

On the Effective Date, the adoption of each Amended Certificate and each of the Amended Bylaws and the NewCo Operating Agreement and the OpCo Operating Agreement will be deemed to have been authorized and approved in all respects to be effective as of the Effective Date, in each case without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders or shareholders or members of the Reorganized Debtors pursuant to applicable corporation, limited liability company and limited partnership law of jurisdictions in which the Reorganized Debtors are incorporated, organized or formed.

In addition, on the Effective Date, the cancellation of all Equity Interests in Summit, the authorization and issuance of the NewCo LLC Equity and New Summit Equity, the Reinstatement of the Equity Interests in all Debtors other than Summit, and all other matters provided herein involving the corporate and capital structure of the Debtors or the Reorganized Debtors or corporate or other action by any of the Debtors or the Reorganized Debtors will be deemed to have occurred, be authorized, and will be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order or rule, including without limitation, any action by the stockholders, shareholders, members, managers, officers or directors of any of the Debtors, any of the Reorganized Debtors pursuant to applicable corporation, limited liability company and limited partnership law of jurisdictions in which the Reorganized Debtors are incorporated, organized or formed. Entry of the Confirmation Order will constitute approval of the Plan Documents and all such transactions subject to the occurrence of the Effective Date.

## 6.2     Corporate Structure of Reorganized Debtors

Each Amended Certificate will, among other things: (a) include, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, (b) to the extent necessary or appropriate, include such provisions as may be necessary to effectuate the Plan and (c) with respect to the Amended Certificate for Reorganized Summit, to the extent necessary or appropriate, include any restrictions on the transfer of the New Summit Equity. The Amended Bylaws, Amended Certificates, the NewCo Operating Agreement, and the OpCo Operating Agreement will provide for the corporate governance of the Reorganized Debtors.

## 6.3     Board of Directors/Managers and Officers of Reorganized Debtors

### 6.3.1      NewCo LLC's Board of Managers and Officers.

On or after the Effective Date, the Board of Managers and officers of NewCo LLC shall be designated in accordance with the NewCo Operating Agreement and other related governance documents of NewCo LLC.

### 6.3.2      Reorganized Summit's Board of Directors.

US_ACTIVE-104570948.13

On or after the Effective Date, the Board of Directors of Reorganized Summit shall be designated in accordance with the Amended Certificate, the OpCo Operating Agreement, and other related governance documents of Reorganized Summit.

### 6.3.3    Reorganized Summit's Officers.

The officers of Reorganized Summit will be the same individuals who served as officers of Summit immediately prior to the Effective Date.

### 6.3.4    Reorganized Affiliates.

The initial Boards of Directors or Managers, as appropriate, of the Reorganized Affiliates shall consist of such number of members as Reorganized Summit in its sole discretion shall determine. The members of such boards shall be appointed by Reorganized Summit and may include one or more executive officers or managers or directors of Reorganized Summit.  Each of the members of these initial Boards of Directors or Managers will serve in accordance with the Reorganized Affiliates' respective certificates or articles of incorporation or organization or formation, as appropriate, and bylaws or operating agreements, as the same may be amended from time to time, and applicable non-bankruptcy laws.

The officers of the Reorganized Affiliates will be the individuals who serve as officers of such Debtors immediately prior to the Effective Date.  Such officers will serve in accordance with the bylaws of the Reorganized Affiliates, as applicable, any employment agreement with such Reorganized Affiliates and applicable non-bankruptcy law.  After the Effective Date, the respective new boards of directors or managers of the Reorganized Affiliates, as appropriate, will determine the officers of the Reorganized Affiliates.

## 6.4    Indemnification of Directors and Officers

The Amended Certificates and the certificates or articles of incorporation or organization or formation of the Reorganized Affiliates will authorize the Reorganized Debtors to indemnify and exculpate their respective officers, directors, managers and agents to the fullest extent permitted under applicable state law.

## 6.5    NewCo Operating Agreement, Registration Rights Agreement and OpCo Operating Agreement

The NewCo Operating Agreement will be in the form attached hereto as Exhibit 4. The Registration Rights Agreement will be in the form attached hereto as Exhibit 12  The NewCo Operating Agreement and Registration Rights Agreement shall be binding on (a) all holders of Allowed Pre-Petition First Lien Secured Claims and (b) all holders of Allowed Pre-Petition Second Lien Claims regardless of whether the holders of such claims execute the agreements or either of them. The OpCo Operating Agreement will be in the form attached hereto as Exhibit 11.

## ARTICLE VII. DISTRIBUTIONS UNDER THIS PLAN

## 7.1    Distributions to Holders of Allowed Claims Only

US_ACTIVE-104570948.13

Until a Disputed Claim becomes an Allowed Claim, distributions of Cash, securities and/or other instruments or property otherwise available to the holder of such Claim will not be made.

## 7.2    Distribution Record Date

As of the close of business on the date the Clerk of the Bankruptcy Court enters the Confirmation Order or such other date prior to the Effective Date as may be designated in the Confirmation Order, the various transfer registers for each of the Classes of Claims or Equity Interests (other than Class 1) as maintained by the Debtors or their agents will be deemed closed, and there will be no further changes in the record holders of any of the Claims or Equity Interests (other than Class 1).  The Debtors will have no obligation to recognize any transfer of any Claims or Equity Interests occurring on or after the Distribution Record Date (other than Class 1).  The Debtors or Reorganized Debtors, as applicable, will recognize only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date.  The Distribution Record Date is the record date for purposes of making distributions under this Plan.

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and if so completed will be deemed to have been completed as of the required date.

## 7.3    Disbursing Agent

Reorganized Summit, as Disbursing Agent, or such other entity designated by Reorganized Summit as a Disbursing Agent, will make all distributions under this Plan when required by this Plan.  A Disbursing Agent will not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

## 7.4    Rights and Powers of the Disbursing Agent

The Disbursing Agent will be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (b) make all distributions contemplated thereby, (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

## 7.5    Delivery of Distributions

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim or Equity Interest will be made at the address of such holder as set forth in the Debtors' books and records and/or on the Schedules filed with the Bankruptcy Court unless the Debtors or their Disbursing Agent have been notified in writing of a change of address, including without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such books and records or Schedules for such holder; provided, however, that all distributions to the DIP Lenders under this Plan will be made by the Disbursing Agent to the DIP Agent for further disbursement to the DIP Lenders.

US_ACTIVE-104570948.13

In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent will use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution will be made to such holder without interest or accruals of any kind. Such distributions will be deemed unclaimed property under Section 347(b) of the Bankruptcy Code on the one year anniversary of the Effective Date. After that date, all unclaimed property or interest in property will revert to the Reorganized Debtors and the Claim of any other holder to such property or interest in property will be discharged and forever barred.

## 7.6    Time Bar to Cash Payments

Checks issued by the Reorganized Debtors on account of Allowed Claims will be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Holders of Allowed Claims shall make all requests for reissuance of checks to the Reorganized Debtors. Any Claim in respect of a voided check must be made on or before the one year anniversary of the date of issuance. After such date, all Claims and respective voided checks will be discharged and forever barred and the Reorganized Debtors will retain all moneys related thereto.

## 7.7    Fractional Shares

No fractional shares or units of New Equity will be issued or distributed under this Plan. The actual distribution of shares and units of New Equity will be rounded to the next higher or lower whole number as follows: (a) fractions of one-half (1/2) or less shall be rounded to the next lower whole number, and (b) fractions of greater than one-half (1/2) shall be rounded to the next higher whole number. The total number of shares or units, as applicable, of New Equity to be distributed herein will be adjusted as necessary to account for such rounding. No consideration will be provided in lieu of fractional shares or units that are rounded down.

## 7.8    Set-Offs

Other than with respect to the Claims of Pre-Petition First Lien Secured Parties, the DIP Agent and DIP Lenders (as to which any and all rights of setoff or recoupment have been waived by the Debtors and the Reorganized Debtors), the Debtors or the Reorganized Debtors may, but are not required to, set off or recoup against any Allowed Claim, any claims, rights, or cause of action of any nature whatsoever that the Debtors or Reorganized Debtors may have against the holder of such Claim. Neither the failure to set-off nor the allowance of any Claim under this Plan will constitute a waiver or release by the Debtors or Reorganized Debtors of any such claim, right or cause of action.

## ARTICLE VIII. PROCEDURES FOR DISPUTED CLAIMS

### 8.1    Resolution of Disputed Claims; Estimation of Claims

Except as set forth in any order of the Bankruptcy Court, any holder of a Claim against the Debtors shall file a Proof of Claim with the Bankruptcy Court or with the agent designated by the Debtors for this purpose on or before the Claims Bar Date. If any such holder of a Claim disagrees with the Debtors' determination with respect to the Allowed amount of such holder's

Claim, the Claim will be a Disputed Claim. The Debtors prior to the Effective Date, and thereafter the Reorganized Debtors, shall have the exclusive authority to file objections on or before the Claims Objection Bar Date, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether classified or otherwise. From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Notwithstanding the foregoing, the Reorganized Debtors must receive the prior written approval of the administrative agent under the Exit Credit Agreement prior to entering into any settlement or compromise of any Disputed Claim if the face amount of the Disputed Claim is in excess of $100,000.

Any Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

## 8.2    No Distributions Pending Allowance

Notwithstanding any other provision in this Plan, except as otherwise agreed by the Debtors or the Reorganized Debtors, no partial payments or distributions will be made with respect to a Disputed Claim or Equity Interest unless and until all objections to such Disputed Claim or Equity Interest have been settled or withdrawn or have been determined by Final Order.

## 8.3    Distributions After Allowance

To the extent a Disputed Claim or Equity Interest becomes an Allowed Claim or Equity Interest, the Disbursing Agent will distribute to the holder thereof the distributions, if any, to which such holder is then entitled under this Plan. Any such distributions will be made in accordance with, and at the time mandated by this Plan. No interest will be paid on any Disputed Claim or Equity Interest that later becomes an Allowed Claim or Equity Interest.

## ARTICLE IX. EXECUTORY CONTRACTS

## 9.1    Assumption of Executory Contracts and Unexpired Leases

As of the Effective Date, all executory contracts or unexpired leases listed on Exhibit 5 hereto shall be and shall be deemed to be rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code. All executory contracts or unexpired leases of the Reorganized Debtors not listed on Exhibit 5 hereto, and not otherwise the subject of a pending objection or pleading seeking to reject or otherwise contesting the executory contract or

US_ACTIVE-104570948.13

unexpired lease, are hereby assumed as of the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to Section 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

**9.2      Cure of Defaults of Assumed Executory Contracts and Unexpired Leases**

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied by payment of the default amount in Cash on the Effective Date, or on such other terms as the parties to such executory contracts or unexpired leases may agree. The Debtors in their discretion may file with the Bankruptcy Court (or any other court of competent jurisdiction) an objection to any matter pertaining to the assumption. All such objections shall be litigated to Final Order, provided, however that the Debtors may compromise and settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any such objections. In the event of a dispute regarding: (a) the amount of any Cure Payments, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the Cure Payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption of any executory contracts or unexpired leases; provided, however, that based on the Bankruptcy Court's resolution of any such dispute, the applicable Debtor or Reorganized Debtor shall have right, within 30 days after the entry of such Final Order and subject to approval of the Bankruptcy Court pursuant to Section 365 of the Bankruptcy Code, to reject the applicable executory contract or unexpired lease.

**9.3      Compensation and Benefit Programs**

Except as otherwise expressly provided under the Plan, all employment and severance policies and all compensation, incentive and benefit plans, policies and programs of the Debtors applicable to their employees, retirees and non-employee directors or members of the boards of directors, including, without limitation, the Employee Retirement Plans and all other savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life, accidental death and dismemberment insurance plans are treated as executory contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of Sections 365 and 1123 of the Bankruptcy Code.

**ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION
AND THE EFFECTIVE DATE**

**10.1      Conditions Precedent to Confirmation**

This Plan will not be confirmed and the Confirmation Order will not be entered until and unless the Confirmation Order and all of the Plan Documents are acceptable in form and substance to (a) the Debtors, (b) the Requisite Supporting First Lien Parties, and, (c) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties.

**10.2     Conditions Precedent to the Effective Date**

The Effective Date of this Plan will not occur unless and until all of the following conditions have occurred or will occur contemporaneously with the consummation of this Plan:

(a)     the Confirmation Order shall have been entered, shall have become a Final Order, and shall be acceptable to (i) the Debtors and (ii) the DIP Agent and shall otherwise be in full force and effect;

(b)     all actions, documents and agreements necessary to implement this Plan and the transactions contemplated by this Plan shall have been executed or become effective;

(c)     the commitments under the DIP Facility shall have terminated, and all of the DIP Obligations shall have been paid in full in Cash by wire transfer of immediately available funds or assumed by the Reorganized Debtors as contemplated by this Plan and in accordance with the terms of the DIP Facility and the Exit Credit Documents, and the commitments thereunder terminated, satisfied or assumed as contemplated by this Plan and the terms of the DIP Facility and the Exit Credit Documents;

(d)     the Exit Credit Documents shall have been executed and delivered by all parties thereto, and all conditions to the initial draw thereunder shall have been satisfied in accordance with the terms thereof;

(e)     the New Equity to be issued under this Plan shall have been duly authorized and, upon issuance, shall be validly issued and outstanding;

(f)     any alteration of any term or provision of this Plan or any other Plan Document by the Bankruptcy Court shall be acceptable to (i) the Debtors, (ii) the Requisite Supporting First Lien Parties, and, (iii) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties;

(g)     all fees, costs and expenses required to be paid under the DIP Facility, the Existing First Lien Credit Documents, the Exit Credit Documents or the Plan, including, without limitation, those of the DIP Agent incurred under the DIP Facility and the Pre-Petition First Lien Agent incurred under the Pre-Petition First Lien Credit Agreement, shall have been paid on or prior to the Effective Date;

(h)     Each Reorganized Debtor, as appropriate, shall have filed with the Secretary of State of the jurisdiction of its organization its Amended Certificate; and

(i)     Reorganized Summit and each of the other parties thereto shall have executed the OpCo Operating Agreement and the Exit Credit Documents.

US_ACTIVE-104570948.13

**10.3    Waiver of Conditions to Confirmation and Effective Date**

The Debtors, with the consent of (a) the Requisite Supporting First Lien Parties and, (b) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties, may waive, in whole or in part, any of the conditions to the confirmation or effectiveness of this Plan.  Any such waiver of a condition may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

**10.4    Effect of Failure of Conditions of the Effective Date**

Unless extended by the mutual agreement of (a) the Debtors, (b) the Requisite Supporting First Lien Parties, and, (c) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties, in the event the conditions specified in Section 10.2 of this Plan have not been satisfied or waived in accordance with Section 10.3 of this Plan by the date that is thirty (30) days after entry of the Confirmation Order, (a) the Confirmation Order will be vacated; (b) no distributions under this Plan will be made; (c) the Debtors and all holders of Claims and Equity Interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (d) all of the Debtors' obligations with respect to the Claims and Equity Interests will remain unchanged and nothing contained in this Plan will be deemed to constitute a waiver or release of any Claims or claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any proceedings further involving the Debtors.

## ARTICLE XI. EFFECT OF CONFIRMATION

**11.1    Discharge of Claims and Termination of Equity Interests**

Except as otherwise provided herein or in the Plan Documents, the treatment of all Claims against, or Equity Interests in, the Debtors hereunder will be in exchange for and in complete satisfaction, discharge and release of all (a) Claims against, or Equity Interests in, the Debtors of any nature whatsoever, known or unknown, including without limitation, any interest accrued or expenses incurred thereon from and after the Petition Date, and (b) all Claims against and Equity Interests in the Debtors' estates or properties or interests in property.  Except as otherwise provided herein or in the Plan Documents, upon the Effective Date, all Claims against and Equity Interests in the Debtors will be satisfied, discharged and released in full exchange for the consideration provided hereunder.  Except as otherwise provided herein or in the Plan Documents, all entities will be precluded from asserting against the Debtors or the Reorganized Debtors or their respective properties or interests in property any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

Nothing in the Confirmation Order or this Plan shall release, discharge, enjoin, or preclude any environmental Claim of any governmental unit against the Debtors (a) that had not arisen (and therefore could not have been asserted) as of the Effective Date or (b) under environmental statutes or regulations that any entity would be subject to subsequent to the Effective Date as the owner or operator of property after the Effective Date and cannot, as a matter of law, be

US_ACTIVE-104570948.13

discharged under the Bankruptcy Code. Moreover, nothing in the Confirmation Order or the Plan releases, nullifies, enjoins, or precludes any liability of non-Debtors to governmental units arising exclusively under environmental statutes or regulations.

## 11.2   Binding Effect.

Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan will bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan. This Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests and their respective successors and assigns, including without limitation, the Reorganized Debtors.

## 11.3   Preservation of Insurance.

The Debtors' discharge from all Claims and Equity Interests as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any Insurance Policy that may cover Claims against the Debtors, the Reorganized Debtors (including without limitation, such entities' officers, directors and managers) or any other person or entity. Notwithstanding the discharge of the Debtors from all Claims and Interests pursuant to the Plan, the Reorganized Debtors shall continue to cooperate with the Insurers in the defense, investigation, and settlement of Potentially Insured Claims to the extent such cooperation does not impose a significant cost or burden on the Reorganized Debtors; it being understood that nothing herein shall affect or impair the right of any Insurer to disclaim coverage with respect to a given claim based on a failure of the Reorganized Debtors to cooperate to the full extent required by the language of a relevant Insurance Policy with respect to that Claim. Nothing in this Plan or the Confirmation Order shall affect or impair the right of any Insurer to disclaim coverage to the extent permissible under any Insurance Policy or applicable law. Notwithstanding the foregoing, the fact that the holder of an Insured Claim has received a distribution under the Plan in lieu of being paid in Cash with respect to any deductible or self insured retention amount shall not be a basis upon which an Insurer may disclaim coverage.

In no event may a holder of a Claim proceed against or recover from any Insurer on any Claim that has been either (a) released by this Plan or (b) Disallowed. However, if a Claim has not been released or Disallowed, even though the Claim has been discharged, then to the extent the Claim is a Potentially Insured Claim, the holder of such Claim shall be entitled, solely to the extent allowed under applicable non-bankruptcy law, to commence and/or maintain an action, in the first instance, in the Bankruptcy Court against the Insurer or Insurers who issued such Insurance Policy or Insurance Policies and, for nominal purposes only, against such Debtor(s); provided, however, that any award granted in any such action shall be enforceable or recoverable only from the then-remaining applicable limits of any applicable Insurance Policy in an amount equal to (a) the lesser of (i) the amount of the award and (ii) the then-remaining applicable limits of any applicable Insurance Policy, minus (b) the amount of any deductible, self insured retention or similar contractual undertaking contained or incorporated in such Insurance Policy or Insurance Policies. As to all Claims, including all Potentially Insured Claims, the Bankruptcy Court shall determine, in the first instance pursuant to applicable bankruptcy law, in what forum

such Claim shall be determined.  Moreover, none of the Insurers shall advance or pay to any third party alleging a Potentially Insured Claim any amount representing or corresponding to any deductible, self insured retention or similar contractual undertaking, and the Insurers shall be required to pay, at most, to any third party alleging a Potentially Insured Claim, only those amounts that are in excess of any applicable deductible, self insured retention or similar contractual undertaking.

Nothing in this Plan or the Confirmation Order shall affect or impair the right of any Insurer who pays a Potentially Insured Claim, or who is the subject of an action by the holder of a Potentially Insured Claim brought pursuant to the preceding paragraph, to seek contribution or indemnification from another Insurer who issued one or more Insurance Policies.  The Reorganized Debtors shall comply with all reasonable requests (not requiring a significant expenditure of funds) by an Insurer for information relating to other Insurers or Insurance Policies that do or may provide coverage for a particular Potentially Insured Claim to the extent such information is available.

**11.4    Section 1146 Exemption.**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or issuance of debt or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales or other similar tax.  Unless expressly provided otherwise, all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including without limitation, the sales, if any, by the Debtors of owned property or assets pursuant to Section 363(b) of the Bankruptcy Code and the assumptions, assignments and sales, if any, by the Debtors of unexpired leases of non-residential real property pursuant to Section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with this Plan and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales or other similar tax law.

**11.5    Compliance with Tax Requirements.**

In connection with the implementation and consummation of this Plan, the Debtors will comply with all withholding and reporting requirements imposed by any taxing authority, and all distributions thereunder will be subject to such withholding and reporting requirements.

**11.6    Severability of Plan Provisions.**

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power, with the consent of the (a) the Requisite Supporting First Lien Parties and, (b) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien

US_ACTIVE-104570948.13

Parties, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

## 11.7    Exemption from Securities Laws.

The issuance of New Equity and any other securities that may be deemed to be issued pursuant to this Plan shall be exempt from state and federal securities laws pursuant to Section 1145 of the Bankruptcy Code.

## 11.8    Allocation of Plan Distributions Between Principal and Interest.

To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated, for federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

## ARTICLE XII. RETENTION OF JURISDICTION

## 12.1    Post Effective-Date Jurisdiction

On and after the Effective Date, the Bankruptcy Court will retain and have jurisdiction, to the fullest extent permissible under law, over all matters arising in, arising under, or related to the Debtors' Reorganization Cases, or that relate to any of the following:

(a)    To hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases, resolution of disputes pertaining to Cure Payment amounts and the allowance of the Claims resulting therefrom.

(b)    To hear and determine any application to modify this Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(c)    To hear and determine any application under Sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred by professionals prior to the Effective Date, provided, however, that from and after the Effective Date, the payment of fees and expenses incurred from and after the Effective Date of the retained professionals of the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

US_ACTIVE-104570948.13

(d)     To hear and determine any dispute or reconcile any inconsistency arising in connection with this Plan, any of the Plan Documents or the Confirmation Order or the interpretation, implementation or enforcement of this Plan, any of the Plan Documents, the Confirmation Order, any transaction or payment contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing.

(e)     To hear and determine any matter concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

(f)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and Title 28 of the United States Code.

(g)     To hear and determine any rights, claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code.

(h)     To hear and determine any dispute arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar claims pursuant to Section 105(a) of the Bankruptcy Code.

(i)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court.

(j)     To take any action, and issue such orders as may be necessary or appropriate, to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation.

(k)     To take any action to ensure that all distributions are accomplished as provided herein.

(l)     To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, Administrative Expense Claim or Equity Interest.

(m)     To enter, implement or enforce such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated.

(n)     To take any action to recover all assets of the Debtors and property of the Debtors' estates wherever located.

(o)     To enter a final decree closing the Debtors' Reorganization Cases.

(p)     To hear and determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date.

US_ACTIVE-104570948.13

(q)     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Debtors' Reorganization Cases with respect to any Person.

(r)     To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge.

(s)     To hear and determine any other matter that may arise in connection with or is related to this Plan, the Disclosure Statement, the Confirmation Order, any of this Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan or the Disclosure Statement.

## 12.2    Jurisdiction Prior to the Effective Date

Prior to the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters over which it may exercise jurisdiction pursuant to 28 U.S.C. §1334.

## ARTICLE XIII. MISCELLANEOUS PROVISIONS

## 13.1    Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

## 13.2    Payment of Statutory Fees

On the Effective Date, and thereafter as may be required, the Reorganized Debtors shall pay all fees required to be paid pursuant to Section 1930 of title 28 of the United States Code.

## 13.3    Retiree Benefits

On and after the Effective Date, pursuant to Section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors for the duration of the period for which the Debtors have obligated themselves to provide such benefits.

## 13.4    Professional Fee Claims

All final requests for Professional Fee Claims must be filed with the Court not later than forty-five (45) days after the Effective Date. Objections to the applications of such professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Debtors and their counsel and the requesting professional or other entity not later than two (2) weeks prior to the hearing date of the applications. The hearing date on any Professional Fee Claims will be set to allow a reasonable time for objections to be filed.

## 13.5    Modifications and Amendments

US_ACTIVE-104570948.13

Subject to the prior written consent of the (a) the Requisite Supporting First Lien Parties and, (b) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties, this Plan may be amended, modified or supplemented by the Debtors or Reorganized Debtors in the manner provided for by Section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to Section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under this Plan, the Debtors may institute proceedings in the Bankruptcy Court, to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, provided, however, any material amendment or modification will require the consent of the (a) the Requisite Supporting First Lien Parties and, (b) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties.

## 13.6   Corrective Action

Prior to the Effective Date, upon the prior written consent of the (a) the Requisite Supporting First Lien Parties and, (b) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties, the Debtors may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims and Equity Interests.

## 13.7   Plan Revocation, Withdrawal or Non-Consummation

Subject to the prior written consent of the (a) the Requisite Supporting First Lien Parties and, (b) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties, the Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw this Plan, or if confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan and no acts taken in preparation for consummation of this Plan shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interest in, any Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by the Debtors or any other Person. None of the filing of this Plan, the taking by the Debtors of any action with respect to this Plan or any statement or provision contained in this Plan or herein will be or deemed to be an admission by any of the Debtors, the holders of any Claims or any other Person against interest or will be or deemed to be a waiver of any rights, claims or remedies that the Debtors may have, and until the Effective Date all such rights and remedies are and will be specifically reserved. In the event this Plan is not confirmed and the Confirmation Order is not entered, this Plan and the Plan Documents, and any statement

US_ACTIVE-104570948.13

contained herein or therein, may not be used by any Person, party or entity against any the Debtors.

## 13.8   Modification of Exhibits

Subject to obtaining the consents of the (a) the Requisite Supporting First Lien Parties and, (b) to the extent required by the Restructuring Support Agreement, the Requisite Supporting Second Lien Parties, the Debtors explicitly reserve the right to modify or make additions to or subtractions from any schedule to this Plan or the Disclosure Statement and to modify any exhibit to this Plan or the Disclosure Statement prior to the Objection Deadline.

## 13.9   Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit or Plan Document provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

## 13.10   Time

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.  With regard to all dates and periods of time set forth or referred to in this Plan, time is of the essence.

## 13.11   Section Headings

The section headings and other captions contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

## 13.12   Effectuating Documents and Further Transactions

Each of the officers of the Debtors and the Reorganized Debtors is authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary, appropriate or desirable to effectuate and further evidence the terms and provisions of this Plan, the Plan Documents and any securities issued pursuant to this Plan.

## 13.13   Successors and Assigns

The rights, benefits and obligations of any Person named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person; provided, however, that nothing in this Plan or the Confirmation Order shall be deemed to permit the assignment of an Insurance Policy that is non-assignable to any party other than the Reorganized Debtors without the Insurer's consent under applicable non-bankruptcy law.

US_ACTIVE-104570948.13

**13.14 Notices**

All notices, requests and demands to or upon the Debtors or the Reorganized Debtors shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

- Summit Business Media Holding Company
- 5081 Olympic Boulevard
- Erlanger, KY  41018
- Attention:  Chief Financial Officer
- Facsimile: (859) 692-2000

and copies to counsel for the Debtors and the Reorganized Debtors:

- Reed Smith LLP
- 599 Lexington Avenue
- 22nd Floor
- New York, NY  10022
- Attn:  J. Andrew Rahl, Jr.
- Tel: (212) 521-5400
- Fax: (212) 521-5450
- Email: arahl@reedsmith.com

    -and-

US_ACTIVE-104570948.13

- Reed Smith LLP
- 1201 Market Street
- Suite 1500
- Wilmington, DE  19801
- Attn:  Kimberly E. Lawson
- Tel: (302) 778-7500
- Fax: (302) 778 7575
- Email: klawson@reedsmith.com

and copies to counsel for the Pre-Petition First Lien Agent:

- Mayer Brown LLP
- 71 S. Wacker Dr.
- Chicago, IL 60606
- Attn:   J. Robert Stoll
-           John J. Voorhees, Jr.
- Tel: (312) 782-0600
- Fax: (312) 701-7711
- Email: jstoll@mayerbrown.com
-           jvoorhees@mayerbrown.com

and copies to counsel for the Pre-Petition Second Lien Agent:

- Bingham McCutchen LLP
- 399 Park Avenue
- New York, NY  10022-4689
- Attn:   Katherine G. Weinstein
- Tel: (212) 705-7761
- Fax: (212) 702-3691
- Email: katherine.weinstein@bingham.com

and copies to counsel for the administrative agent for the Revolving Lenders:

- Sidley Austin LLP
- One South Dearborn Street
- Chicago, IL 60603
- Attn:   John Box
- Tel: (312) 853-7425
- Fax: (312) 853-7036
- Email: jbox@sidley.com

Any delivery after 5:00 p.m., prevailing Central time, on a Business Day, or on a day that is not a Business Day, shall be deemed to have been made on the immediately following Business Day.

US_ACTIVE-104570948.13

Dated: _____

Respectfully submitted,

SUMMIT BUSINESS MEDIA HOLDING
COMPANY, as agent and attorney-in fact for each
of the Debtors listed on Exhibit 1

By: _Thomas M Fly_____
Name: _Thomas M. Flynn_____
Title: _Chief Financial Officer_____

COUNSEL:

REED SMITH LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801       /s/ Kimberly E. Lawson
Telephone: (302) 778-7500     Kimberly E. Lawson, Counsel for the Debtors and
Facsimile: (302) 778-7575     Debtors-in-Possession

-and-

REED SMITH LLP
599 Lexington Avenue
22nd Floor
New York, NY 10022       /s/ J. Andrew Rahl, Jr.
Tel: (212) 521-5400       J. Andrew Rahl, Jr., Counsel for the Debtors and
Fax: (212) 521-5450       Debtors-in-Possession

**<u>Exhibit 1</u>**

**Debtors**

1. Summit Business Media Holding Company

2. Summit Business Media Intermediate Holding Company, LLC

3. The National Underwriter Company

4. Research Holdings, LTD.

5. Futures Magazine, Inc.

6. NUCO Business Information, LLC

7. Agent Media Corporation

8. Judy Diamond Associates, Inc.

9. Mining INDABA, LLC

## Exhibit 2

## Amended Bylaws

To be filed with Plan Supplement.

## Exhibit 3

## Amended Certificates

To be filed with Plan Supplement.

**Exhibit 4**

**NewCo Operating Agreement**

US_ACTIVE-104570948.13

## **Exhibit 5**

## **Rejected Executory Contracts and Unexpired Leases**

To be filed with Plan Supplement.

**Exhibit 6**

**Restructuring Support Agreement**

US_ACTIVE-104570948.13

## Exhibit 7

## DIP Facility

US_ACTIVE-104570948.13

# **Exhibit 8**

## **Exit Credit Agreement**

**Exhibit 9**

**Exit Credit Documents**

To be filed with Plan Supplement.

**<u>Exhibit 10</u>**

**Management Incentive Plan**

## Exhibit 11

## OpCo Operating Agreement

To be filed with Plan Supplement.

## Exhibit 12

## Registration Rights Agreement

To be filed with Plan Supplement.

**Note:** Exhibits 2, 3, 5, 9, 11, and 12 will be filed with the Plan Supplement (as defined in the Plan). Exhibits 4, 6, 7, 8, and 10 to this Plan are voluminous. They were filed with the Court on January 31, 2011 and are available as part of D.I. 46. They are hereby incorporated by reference.

Exhibit 1      List of Debtors

Exhibit 2      Amended Bylaws

Exhibit 3      Amended Certificates

Exhibit 4      NewCo Operating Agreement

Exhibit 5      Rejected Executory Contracts and Unexpired Leases

Exhibit 6      Restructuring Support Agreement

Exhibit 7      DIP Facility

Exhibit 8      Exit Credit Agreement

Exhibit 9      Exit Credit Documents

Exhibit 10    Management Incentive Plan

Exhibit 11    OpCo Operating Agreement

Exhibit 12    Registration Rights Agreement